818 So.2d 609 (2002)
TIMBERLAND CONSOLIDATED PARTNERSHIP, et al., Appellant,
v.
ANDREWS LAND AND TIMBER, INC., Appellee.
No. 5D00-2712.
District Court of Appeal of Florida, Fifth District.
May 17, 2002.
Rehearing Denied June 20, 2002.
*610 Sharon Lee Stedman of Sharon Lee Stedman, P.A., Orlando, for Appellant.
Jeffrey R. Dollinger and John F. Roscow, IV, of Scruggs & Carmichael, P.A., Gainesville, for Appellee.
THOMPSON, C.J.
Timberlands Consolidated Partnership ("seller") appeals a final judgment in a contract dispute. We affirm, writing only to address the restitution issue.
The seller entered an agreement to sell the "merchantable" timber on its land to Andrews Land and Timber, Inc. ("buyer"). The term of the contract was 18 months. Under the contract, the buyer was to pay the seller weekly as the timber was harvested. The amount paid by the buyer would depend on the type of timber harvested and the number of tons. As the buyer harvested, the timber would be trucked to a mill and sold. After the mill paid the buyer, the buyer was to pay the seller and the loggers (who were to pay the truckers), and keep the balance for itself. The contract provided that the seller retained title to the timber until it was harvested, at which time title passed to the buyer. The contract did not require that a certain amount of timber be harvested by a time certain.
The contract required the buyer to pay a $200,000 "advance" upon execution of the contract. The buyer was to be credited for this advance at the beginning of the contract and the end of the contract. Having prepaid $200,000, the buyer would not make any weekly payments to the seller until the point at which the buyer, had it not prepaid, would have owed the seller $100,000. Once the buyer received credit for $100,000, the buyer would begin making weekly payments to the seller. Then, when 85% of the land was harvested, the buyer was to begin receiving credit for the remaining $100,000 of the advance, by withholding what otherwise would have been the seller's part of the proceeds from the mill.
Before the expiration of the contract term, and before an 85% harvest had been achieved, the buyer ceased all logging operations on the land. According to the buyer, the weather was unusually wet, making it impossible to harvest. According to the seller, the weather was not unusually wet. The buyer asked the seller for a six-month extension of the contract, pursuant to a provision which allows such *611 an extension in the event of "mill shutdowns and/or strikes, bad weather, high water, or other Acts of God." The seller refused the request for an extension, and the buyer sued, alleging that the seller was in breach for refusing the extension. The buyer also sued for the $100,000 in advance money, which the seller had refused to return. The seller counterclaimed for lost profits and other damages. In the meantime, after expiration of the term of the contract, the seller entered a harvesting contract with another logger, who was harvesting at the time of trial.
The case was tried to the court, which found that the buyer had breached the contract, causing the seller $30,000 in damages. The court also found that the seller had been unjustly enriched by retaining the $100,000, and after setting off the $30,000, awarded the buyer $70,000. The seller's appeal ensued.
To state a claim under the theory of unjust enrichment, it must be shown that: 1) the plaintiff conferred a benefit on the defendant, who has knowledge of the benefit; 2) the defendant accepts and retains the conferred benefit; and 3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it. Duncan v. Kasim, Inc., 810 So.2d 968 (Fla. 5th DCA 2002). The phrase, "unjust enrichment" is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under circumstances that give rise to a legal or equitable obligation to account therefor. Lowry v. Lowry, 463 So.2d 540, 541 (Fla. 2d DCA 1985) (quoting 66 Am.Jur.2d, Restitution and Implied Contracts § 3 (1973)). It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. Id. (quoting 66 Am.Jur.2d, Restitution and Implied Contracts § 3 (1973)).
The buyer's claim for restitution is extracontractual. See Micro Data Base Systems, Inc. v. Dharma Systems, Inc., 148 F.3d 649, 656 (7th Cir.1998). Generally, if a party to a contract justifiably refuses to perform on the ground that the party's remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit he has conferred by way of part performance in excess of the loss that he has caused by his own breach. Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller, 629 So.2d 947 (Fla. 4th DCA 1993) (quoting Restatement (Second) of Contracts § 374(1) (1979)). A non-breaching party who has received a benefit in excess of his damages has been unjustly enriched, entitling the breaching party to restitution. Micro Data Base Systems, Inc., 148 F.3d at 656.
In the instant case, the buyer conferred a benefit of $100,000 on the seller, which retained both it and the timber for which it was a prepayment. In addition, the seller was in the course of reselling the same timber to another logger. We think that under these circumstances the trial court correctly concluded that the seller had been unjustly enriched, and that equity required the return of the advance, less damages caused to the seller by the buyer's breach.
AFFIRMED.
SHARP, W., and SAWAYA, JJ., concur.