**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Saint John TYLER, Defendant,**

**and Concerning Gordon Gossett, Respondent.**

**No. 89SC462.**

Supreme Court of Colorado, En Banc.

Sept. 10, 1990.

---

23

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for petitioner.

Kimball Gardner, Clawson, Potter & Gardner, P.C., Colorado Springs, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *People v. Tyler*, 784 P.2d 815 (Colo.Ct.App.1989), reversing a trial court order which denied the motion of a surety to set aside the forfeiture of a bail bond because the defendant failed to appear. The court of appeals ruled that, in the underlying criminal case, the trial court materially increased the risk to the surety that the defendant would not appear when it accepted the defendant's withdrawal of a guilty plea and set the case for trial five months later. Under this court's decision in *Rodriquez v. People*, 191 Colo. 540, 554 P.2d 291 (1976), the court of appeals held that the trial court's actions terminated the surety's obligation under the bail bond. We find that the surety, under the terms of the bond obligation, agreed to guarantee the appearance of the defendant until final sentencing. Therefore, the actions of the trial court in permitting the defendant to withdraw his guilty plea did not increase the risk inherent in such a guarantee. We reverse the decision of the court of appeals and remand this case to that court with directions to reinstate the judgment of the trial court upholding the forfeiture of the bond.

I.

This case arises out of a bail bond posted for the defendant Saint John Tyler, following his arrest in May of 1985 on two counts of Distribution of a Controlled Substance,

Schedule II, section 12–22–310, 5 C.R.S. (1985), and section 18–18–105(2)(a), 8B C.R.S. (1986). Under the terms of the bond, posted in July of 1985, the surety, Gordon Gossett, agreed to guarantee Tyler's attendance at all appearances scheduled by the court "until the final sentence or order of the Court." Subsequently, in November of 1986, Tyler agreed to plead guilty, apparently in the expectation of being accepted into a community corrections program. On November 13, 1986, Gossett executed a document titled "Consent to Continue Bond," under the terms of which Gossett agreed to continue the bond until sentencing. On November 21, 1986, pursuant to a plea bargain agreement, Tyler pled guilty to one of the counts pending against him and the case was continued for sentencing until December 19, 1986. The plea was entered pursuant to an agreement with the People under which, among other things, the People agreed not to oppose Tyler's placement in a community corrections program. Gossett testified that, in consenting to the extension of the bond, he understood that Tyler would plead guilty and would be sentenced within thirty days. However, when Tyler could not gain admission to a community corrections program, the court on January 30, 1987, permitted Tyler to withdraw his guilty plea. Gossett was not informed of this withdrawal and he did not inquire with the court as to Tyler's status. Tyler's case was set for trial on June 22, 1987. When Tyler failed to appear for trial, the court ordered a forfeiture of the bond.

In the subsequent hearing on Gossett's motion to set aside the forfeiture, the court declined to set aside the forfeiture, finding that the decision permitting Tyler to withdraw his guilty plea and setting the case for trial five months later did not "materially increase the risk" that Tyler would not appear. The court of appeals reversed that decision and we granted the People's petition for a writ of certiorari to consider the proper standard for determining whether a trial court's actions terminate a surety's liability on a bail bond.

## II.

The basic issue presented by this case concerns the nature of the obligation incurred by a bail bondsman when he agrees to act as a surety on a bail bond. The court of appeals, in finding that the trial court should have exonerated Gossett from liability on the bond in this case, applied the rule, first articulated in *Rodriquez*, that "any acts [by the trial court] which materially increase the known and understood risk of a surety have the effect of terminating the surety's obligation on the bond." *Tyler*, 784 P.2d at 816. The court of appeals held that the trial court in the underlying criminal case materially increased the risk that Tyler would not appear when it permitted him to withdraw his guilty plea and then set the case for trial five months later. However, we disagree with the court of appeals' conclusion that *Rodriquez* requires the exoneration of the bail bond in this case.

A bail bond agreement is a contract of surety subject to rules of construction generally applicable to contracts. *Rodriquez*, 191 Colo. at 541, 554 P.2d at 292; *People v. Rincon*, 43 Colo.App. 155, 603 P.2d 953 (1979). In *Rodriquez* we noted that when a bondsman enters into a surety agreement, he or she undertakes a calculated risk and we held that "[e]vents which materially increase that risk have the effect of terminating the obligation." *Rodriquez*, 191 Colo. at 541, 554 P.2d at 292, citing *Restatement of Security* § 128(b) (1941). Section 128 states in relevant part:

> Where, without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time of payment
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (b) the compensated surety is
> (i) discharged if the modification materially increases his risk, . . . .

Before proceeding further, it is useful to consider how section 128(b), stating general principles of surety law, is applicable in the bail bond context. As noted above, the bail bondsman is the surety. The "principal" is the defendant whose ap-

pearance is being guaranteed by the surety on pain of payment of the money in the amount of the bail bond. The creditor, in this instance, is the court to which the surety guarantees that the defendant will appear at the time, place, and manner specified in the bail bond contract. The language of section 128 makes it clear, contrary to the implicit argument of the surety, that not every "event" which materially increases the risk discharges the surety. Only modifications in the conditions of the bond agreement by the principal (the defendant) and the creditor (the court) without the consent of the surety which materially increase the risk which the surety, as an original matter, agreed to assume under the bond contract discharge the surety.

This point is best illustrated by the *Rodriquez* case itself. In *Rodriquez* the surety agreed to guarantee the defendant's appearance in court "from day to day and term to term and not depart without leave," and "to answer unto ... certain charge[s] pending against said Defendant." *Rodriquez*, 191 Colo. at 541, 554 P.2d at 292. This court held that the defendant had "answered" the charges at the time he pled guilty; thus, the trial court's decision to continue the bail bond until sentencing was a modification in the bail bond agreement which materially increased the surety's risk over that agreed to in the bail bond contract. *Id.*, 191 Colo. at 541, 554 P.2d at 293.

■ It is to the bond agreement, then, that courts must look to determine whether a trial court's actions materially increased the risk. *Rodriquez*, 191 Colo. at 541, 554 P.2d at 292. *See, e.g., People v. Smith*, 673 P.2d 1026 (Colo.Ct.App.1983) (court holds that under conditions of bail bond agreement, which stated that the "defendant shall ... not depart [the court] without leave," trial court could permit defendant's absence at a scheduled hearing; thus, such action did not materially change a condition of the bond contract); *People v. Rincon*, 43 Colo.App. 155, 603 P.2d 953 (1979) (court holds that trial court did not materially alter the surety contract by permitting the defendant to leave the state where, as a

condition of the bond, defendant agreed to not leave the state without permission). If the actions of a trial court are consistent with the terms of the bond, then the fact that such actions may, nonetheless, make it less likely that the defendant will appear is of no account. With these principles as our guide, we examine the facts of this case.

■ Under the terms of the bond which he signed, Gossett agreed to guarantee the following:

> [T]he appearance of the Defendant in ... the District Court, on 31 July, 1985, at 9:00 a.m. on the charge(s) of [distribution of a controlled substance] and for any other appearances scheduled by the Court until the final sentence or order of the Court.

Gossett argues that by permitting Tyler to withdraw his guilty plea and then setting the case for trial six months later, the court materially increased the risk which he assumed under the above-quoted bond agreement. We disagree. The trial court's actions were entirely consistent with the terms of the bond. The bail bond agreement did not limit the authority of the trial court to accept or reject a guilty plea, or to set the case for trial. The fact that events developed as they did, that Tyler, more than one year after being released upon bond agreed to plead guilty but then subsequently withdrew that plea, did not alter the risk which Gossett assumed under his original bond.

The possible variations in the course of a particular criminal proceeding are countless. The very purpose of a bail bond contract is so that, through the device of a monetary bond, a third party can guarantee the continued appearance of the defendant at all proceedings in a particular action. *See Restatement of Security*, § 203, comment (b), § 204, comment (b). By shifting the risk of nonappearance to the surety, the court to a large extent lessens its need to be constantly vigilant that a particular defendant does not seek to escape the court's jurisdiction. The object of putting at risk the financial assets of a third party is that the party will see to it that the defendant appears. In guaranteeing that a

defendant will appear until sentencing, a surety cannot complain that the particular path which the defendant's case followed was not the one anticipated by the surety. In accepting such broad responsibility as accepted by the surety here, the surety must take account of the unexpected.

At the time Tyler pled guilty he had not yet been sentenced. The guilty plea alone, under the terms of the bail bond agreement, did not terminate Gossett's obligation. The subsequent withdrawal of the guilty plea, it follows, did not increase the risk the surety originally accepted. *See generally,* Annotation, *Bail: Duration of Surety's Liability on Pretrial Bond,* 32 A.L.R. 4th 504 (1984) and cases cited therein including *State v. United Bonding Ins. Co.,* 74 N.M. 21, 389 P.2d 867 (1964) (surety on bond requiring the defendant's appearance "until said cause is determined" was not discharged upon defendant's guilty plea but remained liable when the defendant failed to appear for the imposition of sentence); *Richardson v. State,* 169 Ark. 167, 273 S.W. 367 (1925) (bond obligation extending until defendant "rendered himself in execution of any final judgment" not terminated by guilty plea where trial court then proceeded to continue case for six months prior to pronouncement of sentence; court noted that the defendant could appear at the sentencing hearing and withdraw his guilty plea, at the time court continued bond, the terms of the bond had not yet been satisfied).

■ The People, Gossett, and the court of appeals all focused their discussion on the "Consent to Continue Bond," signed by Gossett, apparently believing it to be determinative of Gossett's liability. However, we believe that their attention was misdirected. Section 16-4-201, 8A C.R.S. (1986) states that a bond may not be continued in

effect after conviction, unless written consents of the sureties are filed on the record. Further, this court in *Rodriquez* held that a guilty plea was equivalent to a conviction; thus absent consent, a bail bond may not be extended after the entry of guilty plea.

However, we have also recognized that a surety may consent in advance, through language in the original bond obligation, to the continuance of the bond beyond conviction up until sentencing. *O'Neil v. People,* 198 Colo. 9, 595 P.2d 235 (1979). In *O'Neil,* as in this case, the surety agreed to guarantee the appearance of the defendant "until the final sentence or order of the Court." We held that "by executing the contracts containing the above-quoted language, the sureties gave the statutorily required written consent to continue their liability on the bonds after conviction and until sentencing." *O'Neil,* 198 Colo. at 11, 595 P.2d at 237. *O'Neil* is dispositive of Gossett's claim. Thus Gossett's commitment under the original bail bond agreement satisfied the requirements of section 16-4-201 and was effective to extend Gossett's liability on the bond until sentencing.[1]

Even if the original bond agreement itself were not effective to extend Gossett's liability until sentencing, there is nothing in Gossett's "Consent to Continue Bond" which purports to alter his original promise to remain liable until sentencing. On the contrary, Gossett specifically renewed his agreement to guarantee Tyler's appearance "until sentencing." The possibility that Gossett may have believed that the risk that Tyler would fail to appear was minimal in light of Tyler's representations that he intended to plead guilty and shortly thereafter would be sentenced to a commu-

---

1. In the trial court, Gossett argued that a 1985 amendment to section 16-4-201 rendered ineffective his consent to remain liable on the bond until sentencing. The 1985 amendment stated: "No court shall require the posting of any form of bond which allows for the continuance of said bond after a plea of guilty or of *nolo contendere* or following conviction without the filing of record of written consents of the sureties, if any." Chapter 136, section 3,

§ 16-4-201, 1985 Colo.Sess.Laws 621-22. However, this amendment was not applicable in this case. Here, the bond was posted on July 30, 1985. Section 12 of the 1985 act provided that the act took effect and applied to all acts *committed on or after July 1, 1985.* The acts for which Tyler was charged were allegedly committed in May, 1985, before the effective date of the act.

nity corrections program does not alter the unavoidable fact that, nevertheless, Gossett signed the consent form which contained no such limiting conditions. The measure of the scope of a surety's liability on a bond must be the plain language of the bail bond agreement. Trial courts must be able to look to the language of the bail bond itself without inquiring into any "understandings" or "assumptions" held by the defendant or the surety. Here the plain language of the bond requires a forfeiture.

### III.

Because we find that Gossett agreed to guarantee the appearance of Tyler until final sentencing and because Tyler did not appear on the date scheduled for his trial, we hold that the trial court properly ordered that Gossett, as surety, forfeit his bond. The judgment of the court of appeals is reversed. We remand this case to that court with directions to reinstate the judgment of the trial court.