885 So.2d 1016 (2004)
ALLEGHENY CASUALTY COMPANY, Appellant,
v.
ROCHE SURETY, INC., Appellee.
No. 5D02-3617.
District Court of Appeal of Florida, Fifth District.
November 4, 2004.
*1017 Gregg M. Paley and Andrew S. Goldwyn of Paley & Goldwyn, P.L., Boca Raton, for Appellant.
Fred Carrington and Terron M. Carrington of Carrington & Carrington, P.A., Clearwater, for Appellee.
THOMPSON, J.
Allegheny Casualty Company ("Allegheny") appeals a judgment and an award of attorney's fees in favor of Roche Surety, Inc. ("Roche"). We reverse and remand.
Alfredo and Maria Del Carmen Doborganes are bail bondsmen. In April 1994, they entered a contract with Allegheny under which Allegheny would act as a surety for bail bonds written by the Doborganeses. As part of the contract, the Doborganeses deposited funds with Allegheny to cover liabilities on bonds the Doborganeses wrote. These funds, called "build-up funds," are held in trust by Allegheny for the Doborganeses. The contract required the Doborganeses to deposit two percent of every bond they wrote, and hence, apparently, the term "build-up." Under the contract, Allegheny was entitled to retain the funds until its liability "on any and all bonds" was fully discharged.
When the Doborganeses and Allegheny ceased doing business with each other, the Doborganeses entered a surety contract with Roche. The Doborganeses assigned Roche the funds held in trust by Allegheny, but Allegheny refused to release the funds to Roche, mainly because there were allegedly several bonds the Doborganeses had written for which there were no discharges. The evidence of these undischarged bonds consists of six, small, handwritten receipts, presumably written by one of the Doborganeses, for defendants in Dade, Monroe, and Broward (or Brevard) Counties between 1994 and 1997. Two receipts are for $5,000 each (Dade), one is for $1,000 (Monroe), one is for $15,000 (Brevard or Broward), one is for $7,500 (Dade), and one is for $20,000 (Dade). Although Roche had an affidavit from the Clerk of the Court in Dade County stating that there was no record of two or three of the four bonds issued in Dade, Roche did not have discharges for any of the bonds.[1] Allegheny refused Roche's offer to indemnify Allegheny for any losses it might incur in connection with the bonds.
Roche sued Allegheny for a declaratory judgment that Allegheny was obliged to turn over the funds. Allegheny claimed that it was not so obliged because there were outstanding, undischarged liabilities on bonds written by the Doborganeses. *1018 Further, Allegheny contended that it was relieved of its obligation under the contract to return the money to the Doborganeses because they breached the contract by assigning it and by writing bonds for other surety companies during the term of the contract with Allegheny. The court granted Roche's motion for summary judgment and awarded it attorney's fees.
Allegheny argues that the court erred in entering judgment for Roche because there remain, outstanding, undischarged bonds. Allegheny further argues that since there are outstanding liabilities, the Doborganeses had no interest in the fund to assign, and thus Roche, standing in the shoes of the Doborganeses, has no claim. The contract states that on termination of the contract, and once all bonds written by the Doborganeses were discharged, the build-up fund would be returned to the Doborganeses:
In the event of the termination of the agreement, then after all liability of the Company [i.e. Allegheny] on any and all bonds written by the Producer [i.e. the Doborganeses] shall have been fully discharged and all obligations of the Producer hereunder fully met, the said fund or such balance shall then be returned to the Producer with interest thereon.
The trial court ruled that the bonds were discharged under section 903.31(1), Florida Statutes, which provides that bonds expire 36 months after they have been posted:
(1) Within 10 business days after the conditions of a bond have been satisfied or the forfeiture discharged or remitted, the court shall order the bond canceled and, if the surety has attached a certificate of cancellation to the original bond, shall furnish an executed certificate of cancellation to the surety without cost. An adjudication of guilt or innocence of the defendant shall satisfy the conditions of the bond. The original appearance bond shall expire 36 months after such bond has been posted for the release of the defendant from custody. This subsection does not apply to cases in which a bond has been declared forfeited.
(emphasis supplied). Allegheny argues that the underlined portion of the statute, upon which Roche relies, is not applicable to the bonds in question because it was added to the statute by amendment in 1999,[2] after the bonds were written. We agree that the statute does not apply retrospectively.
First, section 903.31(1) affects substantive rights because it affects the counties' rights in forfeitable bail bonds. As a general rule, in the absence of clear legislative intent to the contrary, a law affecting substantive rights is presumed to apply prospectively. Arrow Air, Inc., v. Walsh, 645 So.2d 422 (Fla.1994). Generally, it is impermissible for an amendment to a statute of limitations to extinguish an existing claim. See Polk County BOCC v. Special Disability Trust Fund, 791 So.2d 581, 583 (Fla. 1st DCA 2001). Such an amendment can, however, shorten the limitations period applicable to the prior claim if the intent to make the amendment retroactive is clearly expressed, and if a reasonable time is allowed within which to seek enforcement of such claim. Id. The amendment at issue here is similar to a statute of limitations because it extinguishes a county's right to forfeiture of bonds. If the amendment applied retrospectively, any bond that became three years old on the date the amendment was effective would expire, but there is no provision in the amendment for a reasonable time to seek enforcement of a county's right to forfeit the bond. Hence, because there is no showing of a legislative intent to have *1019 the statute apply retrospectively, we must conclude that the amendment was not intended to be applied retrospectively and that therefore the trial court erred in ruling that the bonds were discharged by operation of law.[3]
Next, Allegheny contends that the court erred in entering judgment for Roche because the Doborganeses breached the contract by assigning their rights under it to Roche, and by doing business with another surety before the termination of the contract between the Doborganeses and Allegheny. Allegheny argues that because of the breaches, Allegheny is not required to perform its obligation to return the build-up fund. We disagree. The contract forbids assignment of "this contract or any interest therein." Because it does not forbid the assignment of the Doborganeses' money, they were free to assign it. See Cordis Corp. v. Sonics International, Inc., 427 So.2d 782 (Fla. 3d DCA 1983); Charles L. Bowman & Co. v. Erwin, 468 F.2d 1293 (5th Cir.1972). Furthermore, even if the contract did forbid the assignment of the trust funds, Allegheny would not simply be allowed to keep the money. See Timberland Consolidated Partnership v. Andrews Land & Timber, Inc., 818 So.2d 609 (Fla. 5th DCA 2002) ("Generally, if a party to a contract justifiably refuses to perform on the ground that the party's remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit he has conferred by way of part performance in excess of the loss that he has caused by his own breach."). Similarly, if the Doborganeses breached the contract by writing bonds through another surety, and we do not here decide that they did breach the contract, it would not entitle Allegheny to a windfall. Id.
Allegheny further claims that the trial court did not have subject matter jurisdiction because the contract provides that "exclusive jurisdiction and venue shall lie in the State of New Jersey." This provision cannot divest the court below of its jurisdiction, which is established by the constitution and statutes enacted pursuant to it. Henry P. Trawick, Jr., Trawick's Florida Practice and Procedure, § 3-1 (2000); Evans v. State, 647 So.2d 180 (Fla. 1st DCA 1994) (defendant cannot confer jurisdiction on court by waiver, acquiescence, estoppel, or consent, since jurisdiction is established solely by general law).[4]
*1020 Finally, Allegheny contends that the court erred in awarding attorney's fees to Roche. Roche sought attorney's fees pursuant to section 57.105(1) and (3). In its order, the court stated that it awarded the fees pursuant to "its inherent authority because the cause of justice so requires." The award of fees is to Roche, but it does not specify whether it is against Allegheny and/or Allegheny's attorneys. The court made no findings of fact.
In Bitterman v. Bitterman, 714 So.2d 356 (Fla.1998), the court held that in the absence of statutory or contractual authority, a court could award attorney's fees under the inequitable conduct doctrine. Later, in Moakley v. Smallwood, 826 So.2d 221 (Fla.2002), the court held that a trial court has inherent jurisdiction to award attorney's fees as a sanction against a party's attorney for bad faith conduct. However, in Moakley, the court held that an award of fees must be based on an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees. Id. at 227. Furthermore, the amount of the award must be directly related to the attorneys' fees and costs that the opposing party has incurred as a result of the specific bad faith conduct of the attorney. Id. The requirements of Moakley also apply when the attorney's fee award is a sanction against a party pursuant to Bitterman. T/F Systems, Inc. v. Malt, 814 So.2d 511 (Fla. 4th DCA 2002).
In the instant case, the trial court did not follow the procedures described in Moakley, so the award of attorney's fees must be reversed. Furthermore, it is not clear whether the court thought that Allegheny indulged in litigation tactics that warranted sanctions, or that Allegheny was acting in bad faith by refusing to release the money, or both. On remand, the trial court may revisit this issue if it is deemed appropriate. See North County Co., Inc. v. Bologna, 816 So.2d 842 (Fla. 4th DCA 2002).
REVERSED and REMANDED.
GRIFFIN, J., and PARSONS, W.A., Associate Judge, concur.
NOTES
[1] At one of the hearings below, Allegheny's counsel told the court that the Doborganeses said in their depositions that they lost their records when a lessor disposed of their property because they did not pay a storage bill.
[2] See Chapter 99-303, § 7, Laws of Florida.
[3] Roche argues that given the age of the bonds in issue, the trial court properly took into consideration the affidavit of the Dade County court clerk when hearing argument that Roche had difficulty in obtaining discharges. It may be that, as a practical matter, there is no longer any liability under these bonds and that Allegheny is acting in bad faith by apparently insisting on formal discharges. If Roche can show that Allegheny is no longer liable on the bonds but cannot obtain the formal discharges Allegheny seems to be insisting on, then Roche may be entitled to relief based on a theory such as impossibility of performance and/or the contractual duty of good faith, see e.g. Market Street Associates Ltd. Partnership v. Frey, 941 F.2d 588 (7th Cir.1991) ("Good faith" is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties). At this stage, however, Roche has shown no more than that the outstanding bonds are old and that at a certain point in time there was no record in Dade County regarding some of the outstanding bonds.
[4] According to the initial brief, the trust account is held in a bank in Inverness, Florida, so the funds are within the territorial jurisdiction of the court below. There can be no claim, therefore, that the local action rule precludes the action below. Compare Ruth v. Department of Legal Affairs, 684 So.2d 181 (Fla.1996).