The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Sergio DIAZ–GARCIA, Defendant,

and

Concerning Benjamin Mares,
Surety–Appellant.

No. 04CA2658.

Colorado Court of Appeals,
Div. IV.

Aug. 24, 2006.

Rehearing Denied Sept. 28, 2006.

John W. Suthers, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Mitch Geller, Denver, Colorado, for Surety–Appellant.

Opinion by Judge J. JONES.

In this bail bond forfeiture case, surety, Benjamin Mares, appeals the district court's order denying his motion to vacate the entry of a forfeiture judgment on a bail bond he posted for the defendant, Sergio Diaz–Garcia. We affirm.

## I.  Background

On November 18, 2002, the defendant, a Mexican national, was arrested and charged by the State of Colorado with four counts of felonious possession and distribution of controlled substances. Surety and his agent, Myrna B. Santos, are professional bail bondsmen who are licensed to do business in the State of Colorado and insured by International Fidelity Insurance Company (insurer). On November 19, 2002, Santos posted a $30,000 bond for the defendant's release.

On March 17, 2003, the defendant failed to appear at a pretrial motions hearing. On the same day, the district court issued a warrant for his arrest. On March 18, 2003, the district court issued a "Notice of Bail Forfeiture" (notice) pursuant to § 16–4–112, C.R.S. 2005 (governing bond forfeitures and judgments against "compensated sureties"), which the court sent to Santos and insurer. The notice informed surety of surety's right to request a hearing within fifteen days after receiving the notice to show cause why the bond should not be forfeited and judgment entered against surety. The notice also informed surety that if no such hearing was requested within fifteen days after receiving the notice, the court would enter judgment against surety for the amount of the bond thirty days after the forfeiture date, or on April 17, 2003. Finally, the notice informed surety that if judgment were entered against surety, and that judgment was not satisfied by July 15, then surety would be "on the board"—that is, prohibited 2003, from posting any further bonds in the State of Colorado.

Surety neither requested a show cause hearing nor otherwise responded to the notice within the statutory period set forth in the notice. Accordingly, on April 18, 2003, the district court entered a final forfeiture judgment in favor of the State of Colorado and against surety in the amount of $30,000.

On August 5, 2003, Santos, acting on behalf of surety, filed a "Motion for Stay of Execu-

tion" with the district court, invoking § 16–4–112(5)(g), C.R.S.2005. Therein, Santos alleged that she had located the defendant in Mexico, but that she needed additional time to deliver the defendant to the district court. According to Santos, the defendant "crosses back and forth from Mexico, in Douglas, Arizona." On September 3, 2003, the district court granted surety's motion, allowing surety an additional ninety days before execution on the judgment.

On November 26, 2003, Santos filed a second "Motion for a Stay of Execution" in the district court, again invoking § 16–4–112(5)(g), alleging that it was necessary to wait until the defendant crossed the border to bring him back to appear in court. Santos averred that the defendant is a member of "the Nogales drug cartel," and authorities were "waiting for him to cross the border with a large shipment of drugs." On December 8, 2003, the district court granted the motion, allowing surety an additional ninety days before execution on the judgment would be permitted.

More than four months later, on April 19, 2004, surety filed a "Motion to Vacate Judgment." In addition to those facts previously alleged in Santos's earlier motions, surety alleged that he had been unable to bring the defendant back from Mexico because "security is very tight at all border crossing[s]." On June 30, 2004, the district court denied surety's motion to vacate the judgment.

On October 21, 2004, surety filed a second "Motion to Vacate Judgment," based upon events that surety alleged occurred on October 1, 2004. Attached to his second motion were affidavits from two of surety's agents, also describing the events that occurred on October 1, 2004. According to this motion and its attached affidavits, surety had located and confronted the defendant in Mexico on October 1, 2004, at which time the defendant agreed to return to the United States with surety. Surety claimed the defendant was unsuccessful, however, in reentering the United States because he was refused entry by border patrol agents in or around Douglas, Arizona, due to his suspected status as a drug trafficker, in accordance with federal law. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II), (a)(2)(C)(i).

On November 9, 2004, the district court issued a "Notice to Cure Forfeiture Judgment" pursuant to § 16–4–112(5)(e) and (f), C.R.S.2005, and sent it to surety and insurer. This notice informed surety that unless the judgment was satisfied within fifteen days, surety would be statutorily barred from posting bonds in Colorado. On the same day, the district court denied surety's second motion to vacate the forfeiture judgment.

On November 24, 2004, surety filed a "Motion for Stay of Execution Pending Appeal," which the district court granted on December 3, 2004. On December 23, 2004, surety filed a notice of appeal with this court, challenging the district court's order denying the second motion to vacate judgment.

## II. Analysis

Surety contends on appeal that he was entitled to mandatory exoneration from bond liability under § 16–4–108, C.R.S.2005, and to discretionary exoneration from bond liability under § 16–4–112, C.R.S.2005. We reject both contentions in turn.

### A. No Mandatory Exoneration Under § 16–4–108

Surety argues initially that the district court erred because surety was entitled to exoneration from bond liability pursuant to § 16–4–108(1)(b.5)(I), C.R.S.2005, which provides for a surety's exoneration from bond liability where the defendant is detained or incarcerated in a foreign jurisdiction. We disagree.

We note at the outset that surety did not expressly invoke § 16–4–108(1)(b.5)(I) in any of his motions filed in the district court, though his argument in the district court appears to have largely tracked the language of that statute. Nor did the district court cite § 16–4–108(1)(b.5)(I) in either of its two orders denying postjudgment relief to surety. Arguments never presented to, considered by, or ruled upon by the district court may not be raised for the first time on appeal. *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718, 721 n. 5 (Colo.1992);

*Snowmass Land Co. v. Two Creeks Home-owners' Ass'n,* 159 P.3d 662, 2006 WL 1914076 (Colo.App. No. 05CA0024, July 13, 2006). Nonetheless, we address this argument because surety's failure to preserve it is unclear and the People have not argued on appeal that surety failed to preserve it.

Assuming surety's argument under § 16-4-108(1)(b.5)(I) is properly before us, we conclude that surety is not eligible for exoneration under § 16-4-108(1)(b.5)(I) because § 16-4-108 no longer applies to compensated sureties. Rather, § 16-4-112, enacted in 1999, provides the framework for forfeiture proceedings involving compensated sureties. *See* § 16-4-112(1), C.R.S.2005 (stating that the purpose of this section is to provide a uniform set of bail forfeiture procedures to apply to compensated sureties). Surety in this case is clearly a compensated surety. *See* § 16-4-112(2)(c), C.R.S.2005 (defining "compensated surety" as "any person in the business of writing bail appearance bonds who is subject to regulation by the division of insurance in the department of regulatory agencies, including bonding agents and bail insurance companies"). Therefore, § 16-4-112, and not § 16-4-108, is the proper statute to apply when determining whether surety here is entitled to relief from the forfeiture judgment. *See People v. Escalera,* 121 P.3d 306, 308 (Colo.App.2005) (characterizing § 16-4-112 as "applicable to forfeiture proceedings involving compensated sureties"). Indeed, both the district court and surety repeatedly invoked § 16-4-112 in the forfeiture proceedings in this case.

Finally, even if § 16-4-108(1)(b.5) applied to compensated sureties, surety would still not be entitled to relief in this case because § 16-4-108(1)(b.5) does not apply to post-judgment motions for exoneration from bond liability. In *People v. Caro,* 753 P.2d 196 (Colo.1988), the court construed the predecessor statute to § 16-4-108 and related provisions and concluded that they applied only to prejudgment efforts to set aside forfeiture of a bond. *See also People v. King,* 924 P.2d 1092 (Colo.App.1996) (listing § 16-4-108(1)(b.5) as one method for exoneration from bail bond liability prior to judgment, rather than a method for postjudgment re-

lief). Though surety contends that the relevant statutes have been amended since *Caro* was decided, we do not agree that they have been amended in any way rendering the *Caro* court's analysis and holding obsolete.

## B. No Discretionary Relief Under § 16-4-112

■ Surety also contends that the district court erred in denying his motion to vacate the judgment pursuant to § 16-4-112(5)(h), C.R.S.2005. Again, we disagree.

Section 16-4-112(5)(h) provides that "[t] he court may order that a bail forfeiture judgment be vacated and set aside or that execution thereon be stayed upon such conditions as the court may impose, if it appears that justice so requires."

■ The statutory standard of "that justice so requires" is an appeal to the conscience of the court. *Escalera, supra,* 121 P.3d at 308. In determining whether relief from judgment is warranted under § 16-4-112(5)(h), the court must consider the totality of facts and circumstances in each individual case. *Escalera, supra,* 121 P.3d at 308. Factors the court should consider include: (1) the willfulness of the defendant's violations of the conditions of bail; (2) the surety's participation in locating or apprehending the defendant; (3) the cost, inconvenience, and prejudice suffered by the state resulting from the violation; (4) any intangible costs; (5) the public interest in ensuring the defendant's appearance; and (6) any other mitigating factors. *Escalera, supra,* 121 P.3d at 308. " 'These factors encompass the principle that generally only acts of God, of the state, or of law will relieve a surety from liability.' " *Escalera, supra,* 121 P.3d at 308 (quoting *People v. Bustamante–Payan,* 856 P.2d 42, 45 (Colo.App.1993)).

■ The surety bears the burden of establishing grounds for relief from the forfeiture judgment. *Bustamante–Payan, supra,* 856 P.2d at 45. Moreover, because the decision whether to set aside a forfeiture judgment is within the sound discretion of the district court, we will not reverse the court's decision unless it abused its discretion. *Escalera, supra,* 121 P.3d at 308; *Bustamante–*

*Payan, supra,* 856 P.2d at 44. A court abuses its discretion only if its decision is manifestly arbitrary, unreasonable, or unfair. *See Guevara v. Foxhoven,* 928 P.2d 793, 795 (Colo.App.1996).

Here, it is undisputed that the defendant's failure to appear was willful. To avoid prosecution, the defendant willfully fled to his native Mexico, where he presumably remains at large. This case is therefore distinguishable from *Escalera, supra,* where the Jefferson County Sheriff's Office had released the defendant in that case to the custody of the Immigration and Naturalization Service, which then deported him. *See also People v. American Surety Ins. Co.,* 77 Cal.App. 4th 1063, 92 Cal.Rptr.2d 216 (2000) (acknowledging the distinction in bond forfeiture cases between defendants who have voluntarily fled to another country and those who have been deported).

■ Surety nevertheless argues that he is entitled to relief from the judgment because he made substantial efforts to locate the defendant and to attempt to return him to Colorado to face prosecution, but was prevented from doing so because the government refused to allow the defendant to re-enter the United States. While the record shows that surety made some such efforts, the record does not show any efforts by surety to obtain the defendant's presence in the United States through extradition or other legal process.

■ On appeal, surety attempts to justify his failure to make such efforts by asserting that "it would clearly be nothing but wasted effort because Mexico consistently refuses to extradite its own citizens." In the absence of any record establishing the current practice of the Mexican government with respect to requests for extradition, we are unwilling to indulge this assumption. We note that the United States and Mexico are parties to an extradition treaty. *See* Mexico Extradition Treaty, U.S.Mex., May 4, 1978, 31 U.S.T. 5059. We also note that, in addition to extradition, federal immigration law provides a mechanism for asking the Attorney General to parole an excludable alien for the limited purpose of facing criminal charges. *See* 8 U.S.C. § 1182(d)(5)(A); *In re Bond Forfeiture,* 208 Ariz. 368, 93 P.3d 1084, 1085 (Ct. App.2004) (recognizing availability of procedure); *People v. Argonaut Ins. Co.,* 64 Cal. App.3d 665, 134 Cal.Rptr. 614 (1976) (same). In any event, a division of this court has held that a "district attorney's inability to secure international extradition is, in and of itself, inadequate grounds for exonerating sureties." *Bustamante–Payan, supra,* 856 P.2d at 45.

The state has suffered prejudice as a result of the defendant's flight to Mexico. As things now stand, the state cannot pursue its criminal case against the defendant for drug trafficking, a matter in which the state has a substantial interest.

We also consider that surety waited until several months after judgment was entered before taking any action in response to the notice of forfeiture he timely received. While § 16–4–112(5)(h) does not contain an express time limitation for filing post-judgment motions for relief, such post-judgment motions should be made within a reasonable time after judgment. *Cf.* C.R.C.P. 60(b). Here, surety waited three to four months before taking any action in response to the district court's notice of forfeiture, and the motion at issue in this appeal was filed one and one-half years after judgment was entered. The state has a significant interest in the finality of judgments, *see Craig v. Rider,* 651 P.2d 397, 403 (Colo.1982), which would not be furthered by granting relief in this case.

■ Surety here is seeking to carve out a blanket exception to bond liability for illegal aliens who flee the country and fail to appear in court. The risk of such flight is, however, assumed by sureties when they post bail for illegal aliens. We do not believe that it would be equitable or just to relieve sureties of that risk. If such an exception were created, there would be little incentive for sureties to attempt to investigate the circumstances of defendants (at least visa-vis legal status in the United States) or to return fleeing defendants to court. *See Owens v. People,* 194 Colo. 389, 390–91, 572 P.2d 837, 838 (1977) (surety has incentive to ensure defendant's return in order to avoid forfeiture judgment),

*disapproved of in part on other grounds by Caro, supra,* 753 P.2d at 201 n. 7; cf. *Escalera, supra,* 121 P.3d at 309 (defendant gave surety a Colorado address, claimed to have lived in Colorado the previous six years, and claimed to have previously lived in California his "entire life").

Finally, denial of postjudgment relief is appropriate in this case because surety has failed to introduce any evidence of extreme hardship. *See Caro, supra,* 753 P.2d at 201 (denying exoneration to surety where surety failed to introduce evidence of destitution or extreme hardship); *People v. Gossett,* 680 P.2d 1323 (Colo.App.1984) (upholding trial court's denial of postjudgment relief to surety where defendant had not been returned to custody and record did not establish extreme hardship resulting from forfeiture); *cf. Owens, supra* (vacating forfeiture where evidence was presented that forfeiture caused guarantor of bond to go without food and clothing for herself and her children).

In summary, the equitable factors appropriate for consideration under § 16–4–112(5)(h) do not weigh in favor of granting surety relief from the forfeiture judgment. Thus, we perceive no abuse of discretion by the district court in denying surety's motion to vacate the forfeiture judgment.

### III. Conclusion

For the foregoing reasons, we conclude that the district court did not err in denying surety's motion to vacate the judgment.

The order is affirmed.

Judge CASEBOLT and Judge CARPARELLI concur.