The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Jose Antonio **CHAVARRIA– SANCHEZ**, Defendant,

and

Concerning Rosalie Montoya, d/b/a Reliable Bail Bonds, Surety– Appellant.

No. 08CA0241.

Colorado Court of Appeals, Div. II.

March 5, 2009.

John W. Suthers, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Ronald A. Podboy, P.C., Ronald A. Podboy, Denver, Colorado, for Surety–Appellant.

Opinion by Judge CONNELLY.

Rosalie Montoya, doing business as Reliable Bail Bonds (surety), appeals a district court judgment forfeiting a $20,000 bond posted for a criminal defendant later determined to have been in this country illegally. This appeal invokes a statute that took effect June 1, 2007. See § 16-3-503(1)(c), C.R.S. 2008; Ch. 397, secs. 2, 5, 2007 Colo. Sess. Laws 1771-72, 1774. We hold (1) this statute limits forfeiture to fees collected by professional bonding agents, rather than the entire posted bond, where a non-appearing defendant later is determined to have been present illegally in this country; but (2) the statute does not apply retroactively to this case because it substantively changed prior law. Accordingly, we affirm the judgment forfeiting surety's entire $20,000 bond.

## I. Background

Three dates potentially are relevant to the retroactivity issue. First, on March 7, 2007, surety posted a signed "appearance bond"

promising to pay $20,000 to the State of Colorado if a criminal defendant charged with felony crimes failed to appear for required court proceedings in Adams County. Second, on May 9, 2007, after defendant failed to appear for arraignment, the district court ordered the bond forfeited with notice to the surety and review set for the next month. Third, on June 11, 2007, after the new statute had taken effect and surety had not challenged forfeiture, the court entered a $20,000 judgment against surety.

Surety subsequently moved to limit bond liability to the amount of fees collected from defendant ($2000), which she deposited in the court registry. Surety provided evidence that defendant was a Mexican national who had been in this country illegally and who had been deported to Mexico prior to the arraignment at which he failed to appear.

The district court denied surety's motion and refused to stay execution on the judgment. After surety unsuccessfully sought an extraordinary writ and stay from the supreme court, she paid the $20,000 judgment and noticed a timely appeal to this court.

## II. Discussion

■ Surety argues the bond forfeiture judgment violated section 16–3–503(1)(c). The People respond this section should not be applied retroactively to this case and, in any event, does not entitle surety to relief. These arguments involve legal issues of statutory interpretation reviewed de novo on appeal. *See Alvarado v. People,* 132 P.3d 1205, 1207 (Colo.2006).

### A. Overview

■ Several related issues arise where a party raises a retroactivity objection to applying a statute. The first is whether application would be "prospective" or "retroactive." *See Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 11 (Colo.1993). Second, if applying the statute would have retroactive effect, a court must determine whether the legislature intended such retroactivity. *City of Colorado Springs v. Powell,* 156 P.3d 461, 465 (Colo.2007). Third, given a state constitutional bar on "retrospective" legislation, Colo. Const. art. II, § 11, answering the

first two inquiries affirmatively requires determining whether applying the statute would be permissibly "retroactive" or impermissibly "retrospective." *See Ficarra,* 849 P.2d at 11–13 (explaining differing legal effects of "prospective," "retroactive," and "retrospective" labels).

■ These related issues require courts to interpret how new legislation changed the prior legal landscape. Retroactivity analysis turns in part on whether any changes were "substantive" rather than "only procedural or remedial." *See, e.g., Continental Title Co. v. District Court,* 645 P.2d 1310, 1315 (Colo. 1982); *Saxe v. Bd. of Trustees,* 179 P.3d 67, 74 (Colo.App.2007).

### B. Forfeiture of Bonds Posted for Illegal Aliens

#### 1. Pre–June 2007 Law

Colorado law formerly required entry of an order forfeiting a compensated surety bond where a defendant failed to appear, even if the reason was the defendant's deportation or return to his native country. *See generally People v. Diaz–Garcia,* 159 P.3d 679 (Colo. App.2006); *People v. Escalera,* 121 P.3d 306 (Colo.App.2005). Compensated sureties were not entitled to "mandatory exoneration" in such cases, but instead were limited to seeking "discretionary relief" from forfeiture. *Diaz–Garcia,* 159 P.3d at 681–83.

Compensated sureties seeking discretionary relief had to "appeal to the conscience of the court" by showing that " 'justice . . . require[d]' " such relief. *Id.* at 682 (quoting § 16–4–112(5)(h), C.R.S.2008). Relief turned on the totality of the circumstances, and "[n]o clear rule" applied. *Escalera,* 121 P.3d at 308. Nonetheless, a surety with no prior reason to know of a defendant's illegal status had a compelling case for exoneration from bond forfeiture if the defendant subsequently was deported involuntarily. *Id.* at 308–09 (finding abuse of discretion for district court to deny relief in such a case); *but cf. Diaz–Garcia,* 159 P.3d at 683 (surety not entitled to discretionary relief where defendant voluntarily fled to his native Mexico despite claims Mexico would refuse to extradite him

back); *People v. Bustamante–Payan,* 856 P.2d 42, 45 (Colo.App.1993) (sureties not entitled to relief even though they located defendant in Mexico and district attorney refused to extradite defendant).

To seek discretionary relief from forfeiture, compensated sureties must request a show-cause hearing within fifteen days of receiving notice of forfeiture. § 16–4–112(5)(b)(III), C.R.S.2008. Otherwise, the court is directed to enter "judgment for the state against the compensated surety" thirty days after the entry of forfeiture. *Id.*

Here, for reasons not apparent in the appellate record, surety did not timely seek discretionary relief pursuant to section 16–4–112. Surety received notice of the forfeiture in May 2007; a month later, after surety had failed to request a show-cause hearing, the court entered judgment for the state and against surety in the entire amount of the posted $20,000 bond. Surety does not argue she was entitled to discretionary relief. Instead, her appeal relies entirely on section 16–3–503(1)(c), which she contends established a legal entitlement to relief.

### 2. The June 2007 Enactment of Section 16–3–503

The statute invoked by surety addresses compensated sureties where "it is determined that a defendant is illegally present in the country after a bail bond is posted on a felony or class 1 or class 2 misdemeanor." § 16–3–503(1)(c). It provides in such cases "the jail or court shall return all documents concerning the defendant that are signed by the bail bonding agent to the agent, and the agent shall return the fees collected pursuant to section 12–7–108(7), C.R.S. [2008], to the court for forfeiture ...." § 16–3–503(1)(c). The latter referenced section authorizes bail bonding agents to collect fees of no more than the greater of $50 or fifteen percent of the posted bail. § 12–7–108(7).

The People contend that "by its plain terms" new section 16–3–503(1)(c) would not entitle surety to relief even if it applied. Were this contention correct, it would obviate any need for retroactivity analysis because there would be no new rule potentially benefiting surety. We conclude it is not correct.

■ The plain terms of the statute require a quid pro quo: the court must return to the surety agent "all documents concerning the defendant that are signed by the bail bonding agent," and the agent must return to the court all fees collected for the posted bond. § 16–3–503(1)(c). One of the court "documents concerning the defendant that [is] signed by the bail bonding agent"—in some cases, the only such document—is the appearance bond itself. If that bond is returned to the surety, no document remains in the court record to which forfeiture could attach.

Accordingly, where subsection (1)(c) applies, it limits compensated sureties' liability to the fees collected for posting the bond rather than the entire amount of the bond. This conclusion is fortified by the statute as a whole and by its legislative history.

The statute treats compensated sureties differently, and more favorably, than nonprofessionals posting bonds. Only "a defendant or person other than a professional bonding agent shall execute a waiver that states that the person understands that the bond or fees shall be forfeited if the defendant is removed from the country." § 16–3–503(1)(a), C.R.S. 2008. Subsection (1)(a) not only requires no such waiver from compensated sureties but also protects them by requiring law enforcement agencies having "probable cause to find that the defendant is likely illegally present in the United States" to notify them of this fact before the bond is posted. *Id.* Subsection (1)(b), which applies only to "a defendant or person other than a professional bonding agent," then singles out nonprofessionals for forfeiture of the entire bond if the defendant is removed from the country. § 16–3–503(1)(b), C.R.S.2008 (applying only to "a defendant or person other than a professional bonding agent who posts bond").

The legislative history confirms the General Assembly's intent to remove compensated sureties from broad forfeiture provisions covering nonprofessionals posting bonds. Section 16–3–503 was part of a bill that originated as House Bill 07–1040. As first introduced, section 503 was just a single-sentence paragraph providing for broad forfeiture of

bonds posted by any "bonding agent or other person" where an illegally-present defendant was removed from the country. The bill went through various iterations as it journeyed through three different House committees.

Section 503 of House Bill 07–1040 ultimately expanded into subparagraphs (1)(a), (b), and (c), in much the same structure ultimately enacted. Initially, however, all three subparagraphs would have applied to professional bonding agents.

Concerns were expressed in the House Appropriations Committee about the potential unfairness to professional bonding agents who might not know a defendant's illegal status when they post bond. Responding to these concerns, Rep. Stephens, the House bill sponsor, expressed the belief that the notice requirements in subsection (1)(a) should protect sureties. Extensive debates ensued over whether those notice requirements provided sufficient protection. *See generally* Hearings on H.B. 1040 before the H. Comm. on Appropriations, 66th Gen. Assemb., 1st Sess. (Apr. 17, 20, and 27, 2007).

The bill ultimately enacted into law expressly excludes professional bonding agents from the broad forfeiture provisions contained in the second sentence of subsection (1)(a) and all of subsection (1)(b). This legislative history therefore confirms our reading of subsection (1)(c) as intended to limit professional bonding agents' liability to the actual fees collected.

### C. The Issue of Retroactivity

Because section 16–3–503 creates new legal rules for professional surety bonds, we now must address retroactivity. We hold the new statutory provisions do not apply to this case.

### 1. The Retroactive Effect of the New Rules

■ We first must decide whether section 16–3–503 would be "prospective" or "retroactive" as applied to this case. The test is this: "[l]egislation is applied prospectively when it operates on transactions that occur after its effective date, and retroactively when it operates on transactions that have already occurred or rights and obligations that existed before its effective date." *Ficarra*, 849 P.2d at 11. To apply this test, a court must identify "the relevant activity that the [new] rule regulates." *Landgraf v. USI Film Products*, 511 U.S. 244, 291, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (Scalia, J., joined by Kennedy and Thomas, JJ., concurring in judgments), *quoted in Republic of Austria v. Altmann*, 541 U.S. 677, 697 n. 17, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004).

The State contends the key date is March 7, 2007, when the bond was posted. Other possibilities are May 9, 2007, when the forfeiture order entered, or June 11, 2007, when judgment entered. We need only decide if the relevant date was before June 1, 2007.

■ The relevant activity in this case occurred no later than May 9, 2007, when defendant failed to appear for arraignment. Under then-existing law, the court was required to and did order forfeiture, with surety's only remedy being to seek discretionary relief under section 16–4–112(5). *Diaz–Garcia*, 159 P.3d at 681–83. While judgment of forfeiture did not actually enter until June 11, 2007, that date cannot be controlling for retroactivity purposes. The judgment was a ministerial act required once surety failed to request a show-cause hearing within fifteen days of receiving notice of the May 9 order of forfeiture. *See* § 16–4–112(5)(b)(III) ("Upon expiration of thirty days after the entry of forfeiture, the court shall enter judgment for the state against the compensated surety if the compensated surety did not request within fifteen days after receipt of notice of such forfeiture a hearing to show cause.").

■ Were we to apply subsection (1)(c) to this case, it would alter substantive consequences that had attached by May 9, 2007. A "bail bond agreement is a contract" affecting three parties: the bondsman as the "surety"; the defendant as the "principal"; and the court or state as the "creditor." *People v. Tyler*, 797 P.2d 22, 24–25 (Colo. 1990).

Applying subsection (1)(c) would change the consequences for two contracting parties—the surety and the state—after defen-

dant had failed to appear for a required court proceeding. Surety here seeks to benefit substantively from these changes by forfeiting only its $2,000 fee and not the $20,000 posted bond that would be subject to forfeiture under the law as it existed on May 9, 2007. Depending on the particulars of a given case, however, the changes might work to a surety's disadvantage. Under pre-June 1, 2007 law, sureties could seek discretionary relief that might allow them to avoid any forfeiture while presumably still retaining all fees paid by a defendant. In contrast, where subsection (1)(c) applies, it requires forfeiture but limits the amount of forfeiture to fees the surety collected from the defendant.

Subsection (1)(c) does not simply alter procedures for effectuating bond forfeitures; rather, it substantively changes the amount subject to forfeiture under a bond contract. Accordingly, unlike a purely procedural or remedial rule that might apply to pending proceedings without triggering any presumption against retroactivity, this new subsection does not apply here unless the legislature affirmatively intended to accord it retroactive effect.

### 2. The Lack of Legislative Intent for Retroactivity

 We "presume a statute operates prospectively" only. *Powell,* 156 P.3d at 464. This presumption is made "in accordance with statutory and common law guidance mandating that unless intent to the contrary is shown, legislation shall apply only to those transactions occurring after it takes effect." *Id.* (citing § 2–4–202, C.R.S.2008; *In re Estate of DeWitt,* 54 P.3d 849, 854 (Colo.2002)).

 Surety has not identified, nor has our independent review of the statutory text and legislative history revealed, any legislative intent that could "overcome the presumption of prospectivity." *Powell,* 156 P.3d at 468. We accordingly decline to apply section 16–3–503(1)(c) retroactively. Our conclusion is in accord with other decisions denying retroactive effect to statutory changes that would benefit sureties but affect states' "substantive rights ... in forfeitable bail bonds." *Allegheny Cas. Co. v. Roche Surety, Inc.,* 885 So.2d 1016, 1018–19 (Fla.

Dist.Ct.App.2004); *Marshall v. State,* 797 S.W.2d 698, 702 (Tex.App.1990).

### III. Conclusion

Surety is not entitled to relief because section 16–3–503(1)(c) does not apply retroactively. Accordingly, the judgment is affirmed.

Judge CARPARELLI concurs.

Judge TAUBMAN concurs in part and dissents in part.

Judge TAUBMAN concurring in part and dissenting in part.

I agree with the majority that section 16–3–503(1)(c), C.R.S.2008, limits bond forfeiture to fees collected by professional bonding agents, rather than the entire posted bond, when a non-appearing defendant is later determined to have been present illegally in the United States. However, I would not address the legislative history in conjunction with that statute. *See Bd. of County Commr's v. ExxonMobil Oil Corp.,* 192 P.3d 582, 585–86 (Colo.App.2008) (if the language of a statute is clear, we need not resort to other rules of statutory interpretation; when statute is ambiguous we look to legislative history, among other factors).

However, I respectfully disagree with the majority's conclusion that this statute does not apply retroactively to this case because I conclude that the statute is procedural, not substantive, and it is not retrospective in its application.

### I. Facts

I agree with the majority's recitation of the facts surrounding this dispute. However, I note that in the motion to rescind bond forfeiture and for exoneration of further bail bond liability filed by surety, Rosalie Montoya, on December 20, 2007, her counsel advised the court that defendant, Jose Chavarria–Sanchez, was deported to Mexico on March 12, 2007. On December 20, 2007, the court denied surety's motion and declined to grant surety another stay from execution on the bond judgment.

Further, because I believe that section 16–3–503(1)(c) applies retroactively, I conclude that the dates cited by the majority are not significant.

## II. Retroactivity

### A. The Relevant Law

As the majority correctly notes, absent legislative intent to the contrary, we presume a statute operates prospectively. § 2–4–202, C.R.S.2008; *City of Colorado Springs v. Powell*, 156 P.3d 461 (Colo.2007). This presumption is based on the view that unless intent to the contrary is shown, legislation shall apply only to those transactions occurring after it takes effect. *In re Estate of DeWitt*, 54 P.3d 849, 854 (Colo.2002).

Although disfavored, retroactive changes are permitted by case law, and the retroactive application of a statute is not necessarily unconstitutional. *Powell*, 156 P.3d at 465. Further, express language of retroactive application is not required for courts to find such intent. *Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6, 15 (Colo.1993); *Abromeit v. Denver Career Service Bd.*, 140 P.3d 44, 50 (Colo.App.2005).

Our courts have used the term "retrospective" to describe a constitutionally prohibited retroactive application of a statute. *See People v. D.K.B.*, 843 P.2d 1326, 1332 (Colo. 1993).

A statute is retrospective if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." *In re Estate of DeWitt*, 54 P.3d at 854 (quoting *Denver S. Park & Pac. Ry. v. Woodward*, 4 Colo. 162, 167 (1878)). As the supreme court noted, "This proscription is intended to prevent the unfairness that would otherwise result from changing the consequences of an act after that act has occurred." *Powell*, 156 P.3d at 465.

However, application of a statute to an existing claim for relief does not violate the prohibition against retrospective legislation when the statute effects a change that is not substantive, but is only procedural or remedial in nature. *Abromeit*, 140 P.3d at 51; *see also Loredo v. Denver Pub. Sch. Dist. No. 1*, 827 P.2d 633 (Colo.App.1992) (procedural change in statute applies to existing cause of action, unless contrary intent is expressed in statute). Further, substantive statutes create, eliminate, or modify vested rights or liabilities, while procedural statutes relate only to remedies or modes of procedure to enforce such rights or liabilities.

### B. Analysis

I first consider whether the General Assembly intended that the statute would operate retroactively. As noted, there is no bar to conclude that the General Assembly intended that a statute operate retroactively.

Here, sections 16–3–501 to–503, C.R.S. 2008, were enacted by the General Assembly in 2007 to provide a legislative scheme to ensure that when a person is illegally present in the United States, is arrested, and is later deported prior to the disposition of the criminal charges, that a record would be kept of all such criminal charges by requiring that the cases not be dismissed and that a warrant be issued. *See* Ch. 397, sec. 1, 2007 Colo. Sess. Laws 1770 (legislative declaration). As part of this legislative scheme, the General Assembly established provisions to issue warrants for persons illegally in the country, § 16–3–501; not to dismiss cases against persons illegally in the country, § 16–3–502; and to recover bonds for persons illegally present in the country, § 16–3–503.

Section 16–3–503 provides a program to limit bond forfeitures to fees collected by professional bonding agents, when a nonappearing defendant is later determined to have been present illegally in the United States. This provision is consistent with the overall legislative intent to ensure that criminal charges not be dismissed against persons illegally present in the United States and later deported. As the majority notes in analyzing section 16–3–503(1)(c), this provision provides special protection for professional sureties and bonding agents, thereby encouraging them to post bonds for arrestees

when they have no basis to believe they are in the country illegally.

Subject to the retrospectivity analysis below, it is reasonable to conclude that the General Assembly intended these provisions in sections 16–3–501 to –503 to apply retroactively in order to maintain records of criminal charges against persons later found to be in the country illegally who are subsequently deported.

### C. Procedural Versus Substantive

As noted, retroactive application of a statute is permissible when it effects a change that is merely procedural. *See Abromeit*, 140 P.3d at 51 (amendments to career service board rules eliminating appeals of classification decisions were procedural); *American Compensation Ins. Co. v. McBride*, 107 P.3d 973, 977 (Colo.App.2004) (amendment providing certain workers' compensation benefits are subject to administrative lien and attachment was procedural); *Johnson v. Colo. State Bd. of Agric.*, 15 P.3d 309, 313 (Colo.App.2000) (amended policy for review of tenured faculty was procedural). I disagree with the majority that section 16–3–503(1)(c) effects a substantive change. A procedural statute relates only to remedies or modes of procedure to enforce such rights or liabilities. *Abromeit*, 140 P.3d at 51.

To determine whether the statute at issue here is substantive or procedural, we must view it in context. That context is provided by examination of Colorado's bail bond statutes, sections 16–4–101 to –112, C.R.S.2008. Section 16–4–101 sets forth those offenses for which pretrial release on bail is possible, while section 16–4–102 provides that, for bailable offenses, any person who is in custody and for whom no bail has been set, has the right to request that bail be set. Further, section 16–4–103 concerns fixing of bail and conditions of bail bonds, section 16–4–104 addresses alternatives to bail bonds, and section 16–4–105 provides for judicial determination of the amount of bail and the type of bond. In particular, section 16–4–105(1) lists the criteria a court must consider in fixing the amount of bond and in determining whether to grant bond to one who has been arrested.

The general bail bond statutes provide exoneration procedures for any person executing a bail bond as principal or as surety, including determination of when the condition of the bond has been satisfied, when the amount of the forfeiture has been paid, and when a surety provides satisfactory evidence to the court that the defendant is unable to appear because of the defendant's death, detention, or incarceration in a foreign jurisdiction. Another procedural provision is section 16–4–112(5)(h), C.R.S.2008, noted by the majority, which allows compensated sureties to seek discretionary relief by appealing to the conscience of the court to show that justice requires that a bail forfeiture judgment be vacated. *See People v. Escalera*, 121 P.3d 306 (Colo.App.2005) (judgment on bond forfeiture set aside when defendant did not appear in court after deportation to Mexico).

In this context, it is evident that the 2007 legislative change contained in section 16–3–503(1)(c) is procedural because it provides a mechanism for forfeiture of fees collected by bonding agents, rather than for forfeiture of the entire bond amount.

The majority nevertheless concludes that section 16–3–503(1)(c) is substantive because it changed the consequences for two contracting parties, sureties and the state, when a defendant is later determined to have been in the country illegally and failed to appear for a required court proceeding. However, changing the consequences of a defendant's nonappearance with respect to sureties and the state does not make this provision substantive. Rather, in my view, the substantive statutes are those discussed above that provide for a defendant's right to obtain bail when incarcerated for certain offenses and the criteria a trial court must consider in determining whether to grant bail and the amount of such bail. *See People v. Tyler*, 797 P.2d 22, 25 (Colo.1990) ("The very purpose of a bail bond contract is so that, through the device of a monetary bond, a third party can guarantee the continued appearance of the defendant at all proceedings in a particular action.").

I conclude that *Allegheny Casualty Co. v. Roche Surety, Inc.*, 885 So.2d 1016 (Fla.Dist.

Ct.App.2004), and *Marshall v. State,* 797 S.W.2d 698 (Tex.App.1990), are distinguishable and do not support the conclusion that section 16–3–503(1)(c) is substantive. In *Allegheny Casualty,* the court held that a Florida statute providing that an original appearance bond shall expire thirty-six months after such bond had been posted for the release of the defendant from custody was substantive and, therefore, not retroactive. The court concluded that the statute was substantive because it extinguished the county's right to forfeiture of bonds. Here, in contrast, the state's right to obtain forfeiture of bonds was not unequivocal, and section 16–3–503(1)(c) merely provided another circumstance in which the state is not entitled to forfeiture of a bond.

*Marshall* is also distinguishable. There, the court held that amendments to the bond statute could not be applied retroactively because, under Texas law, a bond is a contract between a surety and the state. Here, in contrast, the state may be a "creditor," but the bond agreement is between defendant and surety. In any event, as discussed above, the state does not have an unequivocal right to seek the forfeiture of a bond in all circumstances. Consequently, I conclude that the circumstances presented in *Marshall* are different from those here and, as discussed below, that the state here did not have a vested interest in obtaining forfeiture of surety's bond.

Also, as discussed below, section 16–3–503(1)(c) is not unconstitutionally retrospective because it does not take away or impair vested rights acquired under existing laws, does not create a new obligation, does not impose a new duty, and does not attach a new disability with respect to transactions or considerations already past. *See Johnson,* 15 P.3d at 311.

### D. Vested Rights

A vested right is one that is not dependent on the common law or the statute under which it was acquired for its assertion, but has an independent existence. A vested right must be something more than a mere expectation based on an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present enjoyment of the demand, or legal exemption from a demand made by another. *Ficarra,* 849 P.2d at 16.

Thus, "[h]aving the benefit of particular procedures or the ability to invoke particular remedies generally does not constitute a vested right." *Abromeit,* 140 P.3d at 51. Here, any "right" of Montoya or the state is dependent on the pre-2007 statutes. The state's interest in obtaining a forfeiture of the entire bond amount is simply an expectation based on continuance of that law. However, neither the state nor Montoya as surety possessed a vested right that the circumstances for exoneration from bond liability in section 16–4–108 or the relief available by appealing to the conscience of the court under section 16–4–112(5)(h) would remain the only procedures available to benefit sureties.

Further, to the extent that the state was or may be considered a party to the bail bond contract as a "creditor," as the majority indicates, the state did not have an unqualified right to collect on the bond posted by the defendant in the event of his nonappearance for two reasons. First, sections 16–4–108 and 16–4–112(5)(h) already provided circumstances in which the state might not be able to obtain a judgment for forfeiture of a bond, when a defendant did not appear in court when required to do so. Second, the supreme court has noted that the purpose of a bond is "not to enrich the treasury, but to serve the convenience of the party accused, but not convicted, without interfering with or defeating the administration of justice." *Allison v. People,* 132 Colo. 156, 160, 286 P.2d 1102, 1104 (1955) (quoting *People v. Pollock,* 65 Colo. 275, 277, 176 P. 329, 330 (1918)). Moreover, in *Smith v. People,* 67 Colo. 452, 453, 184 P. 372, 372 (1919), the supreme court stated, "The enriching of the public treasury is no part of the object at which the [bail forfeiture] proceeding is aimed. There is no reason for penalizing the sureties when it appears that they are unable, by no fault of their own or of their principal, to perform the condition of the bond." Accordingly, while the state has a legitimate interest in recovering forfeited bonds when defendants do not

appear in court when required to do so, that right is not unqualified.

Based on these circumstances, I conclude that the state did not have a vested right to the prior existing remedies. *See Abromeit,* 140 P.3d at 51 (there is no such thing as a vested right in remedies).

### E. Creating a New Obligation, Imposing a New Duty, or Attaching a New Disability

I further conclude that section 16–3–503(1)(c) does not create a new obligation, impose a new duty, or attach a new disability. Here, the statute modifies surety's original obligation; the statute only changes the circumstances in which a forfeiture of the bond may be declared and provides payment of fees as an alternative to satisfy that obligation. Thus, section 16–3–503(1)(c) did not impose a new obligation on surety. The only other obligation contained in the statute is a ministerial one, requiring the jail or court to return all documents concerning the defendant that are signed by the bail bonding agent to the agent, if it is determined that the defendant is illegally present in the country after a bail bond has been posted for him or her. This new obligation is insufficient to warrant the conclusion that the statute may not be applied retroactively.

Section 16–3–503(1)(c) also does not impose a new duty, other than the ministerial one to return papers just discussed. The only new duty imposed on a surety is one to request forfeiture of its fees, rather than forfeiture of the entire bond amount. In my view, this "duty" is only ministerial and is not the kind of new duty that precludes retroactive application of a statute.

Finally, the statute does not attach a new disability. Rather, it provides a limited benefit to professional bonding agents, as discussed above.

Accordingly, I concur in part and dissent in part from the majority opinion.