[Civ. No. 14676. Third Dist. Aug. 4, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RESOLUTE INSURANCE COMPANY et al.,
Defendants and Appellants.

## COUNSEL

Thomas F. Goodman and Chandler, Chandler & Goodman for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack W. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Kevin M. Corrington and Susan Cohn, Deputy Attorneys General, John Heinrich, County Counsel, and Clement J. Dougherty, Jr., Deputy County Counsel for Plaintiff and Respondent.

## OPINION

**FRIEDMAN, Acting P. J.**—In 1971 Penal Code section 1303 was adopted, establishing a procedure for transferring bail from a dismissed criminal charge to a new criminal charge.[1] Here we consider the effect of the clerk's failure to comply with the statute's command to notify the bondsman of the transfer.

---

[1]Penal Code section 1303 provides: "If an action or proceeding against a defendant who has been admitted to bail is dismissed, the bail shall not be exonerated until a period of 15 days has elapsed since the entry of the order of dismissal. If, within such period, the defendant is arrested and charged with a public offense arising out of the same act or omission upon which the action or proceeding was based, the bail shall be applied to the public offense. If an undertaking of bail is on file, the clerk of the court

Defendant Salazar was arrested on a complaint charging narcotic violations. Bail totaling $25,000 was posted by a group of sureties. A few weeks later the grand jury indicted him on approximately the same charges, plus a conspiracy charge. On February 8, 1973, Salazar appeared before a magistrate, who granted a prosecution motion to dismiss the complaint and ordered the bail transferred to the indictment. The clerk did not notify the bail bondsmen of the transfer. Salazar was arraigned on the indictment, pleaded not guilty and remained at liberty on the bail previously posted. Ultimately he failed to appear for jury trial and the court ordered forfeiture of bail. The court denied the sureties' motion for exoneration. Over the latters' protest the court ordered entry of a summary judgment. The bondsmen appeal.

■ Two rules govern here. One is the law's antipathy to forfeitures and its strict construction of statutes to avoid forfeiture. The second declares: " '[W]here a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or subject to certain limitations, an act beyond those limits is in excess of its jurisdiction.' " These rules hold sway in bail forfeiture cases. (*People* v. *United Bonding Ins. Co.*, 5 Cal.3d 898, 904 [98 Cal.Rptr. 57, 489 P.2d 1385]; *People* v. *Wilshire Ins. Co.*, 46 Cal.App.3d 216, 220 [119 Cal.Rptr. 917].)

These rules have been applied in an analogous situation, preventing forfeitures where the court clerk failed to conform to Penal Code section 1305 (which requires notice to the bondsman of the defendant's nonappearance and of the entry of an order forfeiting bail). The absence of that kind of notice exonerates the surety and prevents entry of a summary judgment against him. (*People* v. *Wilshire Ins. Co.*, *supra*, 46 Cal.App.3d at p. 216; *People* v. *Earhart*, 28 Cal.App.3d 840 [104 Cal.Rptr. 322]; *County of Los Angeles* v. *Resolute Ins. Co.*, 22 Cal.App.3d 961 [99 Cal.Rptr. 743].) The analogy between failure of notice under section 1305 and similar failure under section 1303 is incomplete, because the former statute expressly provides for the surety's release if notice is not given. Section 1303 does not expressly deal with the effect of non-notification. Yet, in view of the purpose of section 1303, the same result follows under that section.

shall promptly mail notice to the surety on the bond and the bail agent who posted the bond whenever the bail is applied to a public offense pursuant to this section."

Enacted in 1971, section 1303 was apparently designed to save accused persons the expense of successive bail bond premiums when a later criminal prosecution was substituted for an earlier. According to the statute, dismissal of the earlier prosecution does not automatically exonerate the surety; rather, the bond remains effective for 15 days while the prosecution initiates a second or renewed prosecution. If, within the 15-day period, a second prosecution is commenced, the accused would not be put to the expense of a second bail premium; rather, his original bail would be transferred to the new proceeding. At that point the notice provision comes into play.

Notification of the surety is integral to the legislative plan. The transfer of bail to a new offense constitutes an ex parte change in the conditions of the bail contract. The notice of transfer supplies the surety an opportunity to reappraise his risks in the light of that change. The new prosecution might include a more serious charge, increasing the possibility that the defendant might skip bail. Notice of the transfer gives the surety an opportunity to surrender the accused and to secure his own exoneration. (See Pen. Code, § 1300.) The notice is an essential of fairness to the bondsman.

The People argue that Salazar was not rearrested on the second accusation, hence that there was no change in his status requiring notification of the sureties. Literally, the second sentence of section 1303 refers to a situation where "the defendant is arrested and charged with a public offense arising out of the same act" as the original charge. That sentence of the statute is designed to protect the defendant from multiple premiums caused by successive prosecutions. It is the new charge, not a re-arrest, which triggers the transfer of bail. The notice of transfer is designed for the protection of the surety. The happenstance of a second arrest is a false quantity in appraising the surety's altered position.

In *People* v. *United Bonding Co., supra,* bail was transferred from a complaint to a grand jury indictment, but with the bondsman's consent. (5 Cal.3d, fn. 2, at pp. 901-902.) In *People* v. *North Beach Bonding Co.,* 36 Cal.App.3d 663 [111 Cal.Rptr. 757], the bond was transferred from a complaint to an indictment; the court observed (at p. 670) that the bond "concededly" covered the second proceeding. Neither of these decisions involved the procedures established by section 1303 and neither considered noncompliance with the notice provision of section 1303.

■ The People argue that lack of notice did not prejudice Salazar's sureties. Where the court activities violate a strict statutory command designed for the surety's protection, we discern no necessity for a showing of prejudice.[2] The court's failure to follow a strict statutory direction designed for the surety's protection exonerated the surety. The court thereafter lacked jurisdiction either to forfeit the bail or to enter a summary judgment.

Judgment reversed.

Regan, J., and Evans, J., concurred.

---

[2]See *People* v. *Wilshire Ins. Co., supra,* 46 Cal.App.3d, fn. 1, at page 220. Here, in support of the motion to exonerate, the sureties filed a statement under penalty of perjury declaring that on February 8, 1973, the municipal court clerk informed their representative that the original complaint had been dismissed; that on August 8, 1973, he was notified that the superior court had declared a forfeiture; that not until the latter date did he become aware that the case had moved into the superior court and that the bond had been transferred. On the assumption that prejudice is necessary, it has been shown.