[Civ. No. 28240. Fourth Dist., Div. One. Feb. 11, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
SURETY INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Mazo, Crystal & Vidor and Paul M. Vidor for Defendant and Appellant.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and James P. Cloninger, Deputy District Attorneys, for Plaintiff and Respondent.

## OPINION

BUTLER, J.—Defendant Pedro Barajas Peres was charged with others in the municipal court in case number 80CF01002 for violation of Penal Code[1] section 182, conspiracy to commit a crime. Appellant Surety Insurance Company (Surety) posted a bail bond for $100,000 on his behalf.

The day of the preliminary hearing, case number 80CF01001 was dismissed, the defendants discharged, immediately rearrested and charged on a new complaint, case number 80CF01065, alleging the same offense. The bail bond posted by Surety under the first complaint was transferred to the new case. Notice of the bail bond transfer was not given to Surety.

Peres was bound over to the superior court. He failed to appear for trial. The bail was forfeited. A motion to set aside the forfeiture and exonerate the bail was denied. This appeal ensued.

Section 1303, applicable here, provides: "If an action or proceeding against a defendant who has been admitted to bail is dismissed, the bail shall not be exonerated until a period of 15 days has elapsed since the entry of the order of dismissal. If, within such period, the defendant is arrested and charged with a public offense arising out of the same act or omission upon which the action or proceeding was based, the bail shall be applied to the public offense. *If an undertaking of bail is on file, the clerk of the court shall promptly mail notice to the surety on the bond and the bail agent who posted the bond whenever the bail*

___

[1]All statutory references are to the Penal Code unless otherwise specified.

*is applied to a public offense pursuant to this section.*" (Italics added.) The original action against Peres was dismissed. Within 15 days, he was charged with the same offense in a second case. The bail was applied to the second case. The clerk failed to give notice to Surety or the bail agent of the transfer of the bond to the second case.

Surety contends this lack of notice voids the transfer and exonerates the bond.

Section 1303 does not deal with the consequences of noncompliance with the notice requirement. Surety argues *People* v. *Resolute Ins. Co.* (1975) 50 Cal. App.3d 433 [123 Cal.Rptr. 246], supports its contention. There, the defendant, Salazar, was arrested on a complaint charging narcotic violations. Bail was posted. Later, the grand jury indicted Salazar on the same charges, and added a conspiracy count. The bail was transferred to the indictment. The clerk did not give notice of the transfer. Salazar failed to appear at trial, and the court ordered the bail forfeited.

On appeal, the surety argued the failure to notify as required by section 1303 precluded a forfeiture of bail. The appellate court agreed, and reversed the order forfeiting the bail.

"Enacted in 1971, section 1303 was apparently designed to save accused persons the expense of successive bail bond premiums when a later criminal prosecution was substituted for an earlier. According to the statute, dismissal of the earlier prosecution does not automatically exonerate the surety; rather, the bond remains effective for 15 days while the prosecution initiates a second or renewed prosecution. If, within the 15-day period, a second prosecution is commenced, the accused would not be put to the expense of a second bail premium; rather, his original bail would be transferred to the new proceeding. At that point the notice provision comes into play.

"Notification of the surety is integral to the legislative plan. The transfer of bail to a new offense constitutes an ex parte change in the conditions of the bail contract. The notice of transfer supplies the surety an opportunity to reappraise his risks in the light of that change. The new prosecution might include a more serious charge, increasing the possibility that the defendant might skip bail. Notice of the transfer gives the surety an opportunity to surrender the accused and to secure his own exoneration. (See Pen. Code, § 1300.) The notice is an essential of fairness to the bondsman." (*People* v. *Resolute, supra,* 50 Cal. App.3d at p. 436.)

In *Resolute,* the defendant was charged with a new offense—conspiracy—in the indictment to which bail was transferred. This arguably increased the risk to the surety resulting from the addition of a new charge.

Here, no new charges were added to the second complaint to which bail was transferred. The People contend the surety incurred no additional risk; in effect, the complaint on which the bail initially issued was simply renumbered; to require notice to the surety of a renumbered complaint exalts form over substance.

The People cite cases under section 1305 which hold failure to give notice of forfeiture of bail later reinstated does not exonerate the bail. Under section 1305, upon the failure of the defendant to appear: ". . . the court must direct the fact [of nonappearance] to be entered upon its minutes and the undertaking of bail, or the money deposited instead of bail, as the case may be, must thereupon be declared forfeited, and, if the amount of the forefeiture exceeds one hundred dollars ($100), the clerk of the court shall, promptly upon entering the fact of such failure to appear in the minutes, mail notice of the forefeiture to the surety on the bond . . . . If the clerk fails to mail such notice within 30 days after such entry, the surety or depositor shall be released from all obligations under the bond." We find section 1305 cases at seeming variance on the issue of notice.

*People* v. *Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216 [119 Cal.Rptr. 917], holds failure to give notice of bail forfeiture exonerates the bond. There, the defendant failed to appear on November 29, 1971. The court ordered forfeiture of the bail and issued a bench warrant. On November 30, the defendant showed up, satisfactorily explained his absence, the forfeiture was set aside and the bail reinstated. No notice of forfeiture or reinstatement was given the surety. Upon failure of the defendant to appear for trial, bail was forfeited and notice sent to the surety. The court held failure to notice the first forfeiture exonerated the bail. The later forfeiture and judgment were void.

On similar facts, but as to the issue of bail reinstatement, *People* v. *Wilshire Ins. Co.* (1976) 61 Cal.App.3d 51 [132 Cal.Rptr. 19], reaches a different result. Again, a forfeiture on a first failure to appear was set aside and the bail reinstated. On a subsequent nonappearance, bail was forfeited and notice was given. The surety argued the first reinstatement was invalid for failure of the surety to be present at the reinstatement done on the court's own motion. The second forfeiture was accordingly void as the bail was exonerated as a matter of law. The court noted: "Although the record is silent, it must be presumed that on July 18 the court discharged the forfeiture because defendant voluntarily appeared and made a satisfactory showing that his failure to appear in court the day before was excusable. In such circumstances, the discharge of forfeiture, reinstatement of bail, and release of defendant on the same bond resulted in no additional risk to the surety. Nothing the court did added to the risk which the

surety had already assumed when it initially undertook its bail obligations." (*Id.,* at p. 61.)

In *People* v. *Amwest Surety Insurance Co.* (1980) 105 Cal.App.3d 51 [164 Cal.Rptr. 159], the defendant failed to appear, bail was forfeited and a bench warrant issued. Thirty minutes later, he appeared. The earlier order was vacated, bail reinstated and the bench warrant recalled. He then failed to appear for trial and bail again was forfeited. The surety argued absence of notice of the first forfeiture acted to exonerate the bond, and the subsequent forfeiture was a nullity. The court held section 1305 did not require, in the circumstances presented, the giving of notice as to the first forfeiture. An order denying vacation of forfeiture was affirmed.

*Amwest* reviews the scheme of bail. A bailbondsman posts an undertaking. A corporate surety agrees to pay a set sum if a defendant fails to appear. The failure to appear triggers bail forfeiture and issuance of a bench warrant. The police seek the missing defendant. The bail bondsman has six months to return the defendant to court or to show an inability so to do. The court then may make such order as to the bail as justice may require. If the defendant is not brought before the court within the six-month period and his absence is not satisfactorily explained, the order forfeiting bail is carried into execution by way of summary judgment. Amendments effective in 1969 permit the court to continue the case without forfeiting bail or issuing a bench warrant if there is probable excuse for failure to appear.

To require notice of a forfeiture vacated within 30 minutes by the court upon satisfactory explanation by the tardy defendant does not do violence to the statutory scheme affording the surety opportunity to produce the missing defendant, surrender him and exonerate the bail. The defendant is before the court. The reinstatement of bail is without prejudice to the surety. Statutory requirements to notice a forfeiture of bail on a 30-minute tardiness would result in an absurd consequence.

"Although proceedings with respect to bail are, very properly, ones which must be carefully followed in order to ensure due process (see *People* v. *Surety Insurance Co.* (1978) 82 Cal.App.3d 229, 236 et seq. [147 Cal.Rptr. 65]), and the cases indicate that proper adherence to the statutory elements is 'jurisdictional' (*People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 904 [98 Cal.Rptr. 57, 489 P.2d 1385]), proceedings relating to bail must be conducted, and the law relating thereto administered, with intelligent and observant response to the statutory scheme. It is not a slavish adherence to mere sham verbiage." (*People* v. *Amwest Surety Insurance Co., supra,* 105 Cal.App.3d at pp. 56-57.) We analyze section 1303 with *Amwest's* admonition in mind.

Upon the dismissal of an action or a proceeding against the defendant who has been admitted to bail, the bail does not automatically exonerate. If during a period of 15 days the defendant is arrested and charged with ". . . a public offense arising out of the same act or omission upon which the action or proceeding was based, the bail shall be applied to the public offense." The phrase "public offense" is synonymous with crime. (§ 15.) The transfer of bail under section 1303 must be to a crime arising out of the same act or omission upon which the dismissed action was based. The phrase "act or omission" appears in section 654 proscribing multiple punishments. We learn an assault occurring in the course of a robbery is a separate act punishable by a term consecutive to that imposed for the robbery (*People* v. *Williamson* (1979) 90 Cal.App.3d 164 [153 Cal.Rptr. 48]); assault and rape are separate offenses but part of indivisible conduct (*People* v. *Apodaca* (1978) 76 Cal.App.3d 479 [142 Cal.Rptr. 830]); assault with a deadly weapon and burglary are separate offenses but arise from a single act (*People* v. *Radil* (1977) 76 Cal.App.3d 702 [142 Cal.Rptr. 233]); felony vehicular manslaughter and felony drunk driving are separate offenses arising out of different acts even though the victim was killed while the driver was under the influence (*People* v. *Rocha* (1978) 80 Cal.App.3d 972 [146 Cal.Rptr. 81]); petty theft of purse and grand theft of a gun in the purse are separate offenses arising out of the same act (*People* v. *Campbell* (1976) 63 Cal.App.3d 599 [133 Cal.Rptr. 815]).

This brief review of the phrase "act or omission" as used in section 654 suggests the number of offenses on which a defendant may be arrested and charged which arise out of the act or omission involved in the earlier dismissed proceeding. We hypothesize most bail transfers to new complaints occur at early stages in criminal proceedings to correct errors in the complaint, procedural deficiencies, discovery delays and to overcome speedy trial requirements. (Witkin, Cal. Criminal Procedure, § 223 et seq.; § 300 et seq.) While the new complaint may be a restatement of the old without surprises, as is the case before us, section 1303 does not prohibit the transfer of the bail to a complaint charging other and more serious offenses arising out of acts or omissions involved in the dismissed complaint.

Courts construing section 1305 forfeitures and reinstatements reason the statutory scheme of bail does not require a literal application of notice requirements in the absence of prejudice to the surety. Those courts validate pro forma reinstatements of bail following unnoticed forfeitures where the purpose of bail has been accomplished, i.e., the appearance of the defendant. Absurd consequences of a literal reading of the statute are thus avoided. Section 1303, however, is not concerned with bail forfeiture upon nonappearance of a defendant.

Section 1303 when brought into play is a unilateral amendment of the surety's contract. It transfers the bail from the complaint described in his undertaking to a new and different complaint which may charge a new and different offense. The surety is not a party to the transfer. His consent is neither asked nor needed for the bail to attach to the new proceeding.

If noticed, the surety has the opportunity to appraise the added risk whether real or imagined, decline to assume it and surrender the defendant even though section 1303 does not spell out that remedy. Section 1300 permits the surrender of the defendant by the bail and upon such surrender the bail may secure exoneration of the undertaking. (*County of L. A.* v. *Stuyvesant Ins. Co.* (1964) 227 Cal.App.2d 428, 431 [38 Cal.Rptr. 713].)

As *Resolute, supra,* 50 Cal.App.3d 433, points out, section 1303 confers a benefit upon the defendant. He avoids the expense of a premium for a second bail because the first bail transfers to the new complaint. He remains at large. We perceive no benefit conferred upon the surety by reason of the transfer. Indeed, on our analysis, substantial detriment may accrue by virtue of an increased risk.

Section 1305 affirmatively provides for bail exoneration for failure to give required notice. Section 1303 simply says bail does not exonerate during a 15-day period following transfer. Statutory omission of exoneration consequences for failure to give notice is not determinative in view of the overriding purposes served by the giving of notice.

■ We conclude that the failure of the court to give notice to the surety within 15 days of the transfer of the bail to the new complaint exonerates the undertaking, even though we deal here with a renumbered complaint charging the same offense and identical parties. As we have shown, the characterization of an offense as arising from the same act or omission is complex requiring exhaustive analysis of facts and law in a myriad of circumstances. The surety undertakes to answer for the defendant's failure to appear at proceedings concerning a specific complaint charging specific offenses. He is entitled to stand on his contract.

We hold section 1303 requires the called-for notice of transfer of the bail without regard to similarity of the pleadings or the parties. The surety need not show prejudice. For whatever reason, he is entitled to reexamine his risk upon the transfer. This he can do only upon notice. For lack of notice, the bail exonerates.

Judgment reversed.

Brown (Gerald), P. J., and Wiener, J., concurred.