**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Robert Ray JONES, Defendant,**

**and Concerning Alma Jones and William H. Jones, Sureties–Appellants.**

No. 93CA0051.

Colorado Court of Appeals, Div. IV.

Feb. 10, 1994.

Rehearing Denied March 10, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Jonathan Arnold Abbott, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Lozow, Lozow and Elliott, Charles W. Elliott, Denver, for sureties-appellants.

Opinion by Judge MARQUEZ.

Sureties, Alma and William H. Jones, appeal from the judgment of $50,000 entered against them on the forfeiture of the bail bond they posted for the defendant, Robert Ray Jones. We reverse and remand with directions.

■ The record reveals that, on October 8, 1991, sureties posted a $50,000 property bond for the release of defendant, their son, from custody on certain drug charges then pending against him. It is undisputed that, at that time, defendant was facing a mandatory minimum sentence of incarceration for 24 years and 1 day if convicted on the drug charges then pending.

The record further shows that the People subsequently moved to file habitual criminal charges against defendant in this matter as well. The trial court granted that motion, and it also continued the existing bond in effect for further proceedings. No notice of any of these actions, however, was provided to sureties. Moreover, it is also undisputed that, as a result of the filing of the habitual criminal charges, defendant was then facing a mandatory sentence of life imprisonment.

Defendant subsequently failed to appear for trial on March 24, 1992. The trial court ordered the forfeiture of the bond and issued an order to show cause to sureties why judgment should not be entered against them on the forfeiture.

At the show cause hearing that followed, sureties presented evidence in support of their motion for relief from bail bond liability. Specifically, sureties asserted that they should be exonerated from liability on the bond because: the subsequent filing of the habitual criminal charges constituted a material increase in their risk on the bond; they had no knowledge of the filing of such charges or that defendant was then facing life imprisonment until his failure to appear and the show cause order; and they would not have remained on the bond had they known of such circumstances.

Following the hearing, the trial court denied sureties' motion for exoneration and, instead, entered judgment against them on the forfeiture. It ruled that the filing of the habitual criminal charges did indeed constitute a substantial increase in the risk to sureties on the bond. This ruling is not contested on appeal.

The trial court, nevertheless, rejected sureties' arguments for exoneration. It found that sureties paid no attention and were not concerned with what the charges were and that they were concerned only with having their son released from custody regardless of the charges involved. Accordingly, it ruled that the increased risk would not have affected their position in posting the bond.

On appeal, sureties contend that the trial court erred in so ruling and assert that they should be exonerated from liability here because the subsequent filing of the habitual criminal charges materially increased their risk on the bond without their knowledge and consent. We agree.

■ In furnishing bond, a surety undertakes a calculated risk, and modifications in the conditions of the bail bond agreement by the trial court which materially increase that risk without the consent of the surety have the effect of terminating the surety's obligation on the bond. *People v. Tyler*, 797 P.2d 22 (Colo.1990).

■ It is to the bond agreement that courts must look to determine whether a trial court's actions materially increased the risk. *People v. Tyler, supra.* Thus, absent consent by the surety, a trial court's actions which materially increase the risk that the surety contractually agreed to assume under the terms of the bail bond agreement operate to discharge the surety's obligation on the bond, as a matter of law. *See People v. Tyler, supra; Rodriquez v. People*, 191 Colo. 540, 554 P.2d 291 (1976); *see also* Restatement of Security § 128(b) (1941).

■ We conclude that the filing of the habitual criminal charges materially increased the risk that sureties had contractually assumed under the bond agreement here.

The substantial increase in the length of the mandatory minimum sentence facing defendant as a result of the subsequent filing of

**38**

the habitual criminal charges materially increased the risk that defendant would fail to appear for trial and materially increased the risk that sureties had contractually agreed to undertake on the drug charges pending at that time. *See People v. Smith,* 645 P.2d 864 (Colo.App.1982) (application of bond posted on misdemeanor charge to additional and subsequently filed felony charge carrying mandatory prison sentence materially increased surety's risk, thereby discharging surety's obligation on bond); *see also* § 16–4–105(1)(h), C.R.S. (1986 Repl.Vol. 8A) (likely sentence from offense presently charged is to be considered as a factor in determining amount of bail and type of bond).

■ Consequently, contrary to the trial court's analysis, unless the sureties consented to the expansion of their risks and obligations on the bond, the continuation of the existing bond following the filing of the habitual criminal charges discharged sureties' obligations on the bond, as a matter of law. *See People v. Smith, supra; Rodriquez v. People, supra.*

In our view, consent to such an increased risk must be explicit. Thus, even if the trial court's findings could be considered as indicating that the sureties "implicitly consented" to such modifications in the conditions of the bond agreement, such a determination would be erroneous as a matter of law.

Here, the risks and obligations the sureties contractually assumed in posting the bond were not open-ended, but rather were objectively defined and limited by the terms of the bond agreement to defendant's appearances solely on the drug charges that were then pending against him.

It is undisputed that sureties had no knowledge of the filing of habitual criminal charges until the show cause proceedings and that they have thereafter challenged such an application of the bond by seeking exoneration from liability on this basis.

Thus, we conclude that the trial court's continuation and application of the bond posted by sureties following the filing of the habitual criminal charges without the knowledge and consent of sureties terminated their obligations on the bond as a matter of law.

*See People v. Smith, supra; Rodriquez v. People, supra.*

Accordingly, the judgment on the forfeiture is reversed, and the cause is remanded to the trial court with directions that sureties be exonerated from liability on the bond.

PLANK and ROTHENBERG, JJ., concur.