[No. F056891. Fifth Dist. Jan. 14, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
BANKERS INSURANCE COMPANY, Defendant and Appellant.

**COUNSEL**

Daniel K. Martin for Defendant and Appellant.

Kevin B. Briggs, County Counsel, and Justin B. Atkinson, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**GOMES, J.**—Bankers Insurance Company (Bankers) appeals from an order denying its motion to set aside the summary judgment entered against it, discharge a forfeiture and exonerate its bail bond.[1] We find no error and affirm.

## FACTUAL AND PROCEDURAL HISTORIES

On August 15, 2007, Bankers's agent posted a $17,500 bond for the release of Jaime Villa (Villa) from custody. The bond stated that Villa had been ordered to appear in court on August 27, 2007, on charges under Health and Safety Code sections 11378 and 11379.[2] Bankers specifically undertook "that [Villa] will appear in the above named court on the date above set forth to

---

[1] On our own motion, we struck Bankers's initial opening brief after finding it failed to comply with the California Rules of Court, and granted Bankers 15 days within which to file a new opening brief. Bankers did so. In the respondent's brief, the People urge us to dismiss the appeal based on continued deficiencies in the second opening brief. Although we acknowledge the second opening brief has deficiencies, we nonetheless deny the People's request to dismiss and accordingly decide the matter on the merits.

[2] The record does not reveal precisely how the bond amount was determined. According to the Fresno County master bail schedule (bail schedule), of which this court has taken judicial notice at the county's request, the base bail for violations of Health and Safety Code sections 11378 and 11379 where the amount of drugs involved is less than one ounce is $7,500 and $10,000, respectively. The arrest report is not part of the record. While Bankers attached as an

answer any charge in any accusatory pleading based upon the acts supporting the complaint filed against him/her and all duly authorized amendments thereof . . . ."

The case was called on August 17, 2007, but dropped from the calendar without any action being taken. Minutes of the hearing note that Villa was not in custody and was bonded for August 27, 2007. On August 18, the Fresno County District Attorney filed a criminal complaint against Villa charging him with possession for sale of one ounce or more of methamphetamine (Health & Saf. Code, § 11378[3] (count 1)), transport for sale of one ounce or more of methamphetamine (§ 11379, subd. (a) (count 2)), and false compartment activity (§ 11366.8, subd. (a) (count 3)).

Villa appeared at the August 27, 2007 arraignment and August 29, 2007 pre-preliminary hearing. Bail was not mentioned at either hearing, although the minutes for each hearing note that Villa remained on surety bond. Despite being ordered to attend a hearing on September 12, 2007, Villa failed to appear. The trial court issued a bench warrant, set bail at $230,000 and ordered the bond forfeited. Notice of forfeiture was mailed to Bankers on September 13, 2007.

On March 14, 2008, Bankers filed a motion requesting an extension of time on forfeiture pursuant to Penal Code section 1305.4. The trial court entered summary judgment against Bankers on October 7, 2008, in the principal sum of $17,500 plus costs and interest, after finding that 185 days had elapsed and the forfeiture had not been set aside.

On November 6, 2008, Bankers filed a motion to set aside the summary judgment, discharge the forfeiture, and set aside the bond. It argued the trial court lost jurisdiction over the bond when the jail released Villa on insufficient bail pursuant to the bail schedule. Pointing out that pursuant to Penal Code section 1269b, the superior court adopted a countywide bail schedule which an officer authorized to release a defendant uses to fix bail, Bankers asserted the jail erroneously determined Villa's bail to be $17,500 when the charges in the complaint warranted bail of $115,000 pursuant to the bail schedule. According to Bankers, the jail's mistake in improperly setting Villa's bail pursuant to the bail schedule prevented it from properly evaluating its risk in posting bail, thereby rendering the bond void.

exhibit to its opening brief a document containing Villa's general information, arrest information, and charges, which lists a bail amount for each charge of $7,500 and $10,000, the document is not part of the clerk's transcript and neither party has requested us to take judicial notice of it.

[3] Subsequent statutory references are to the Health and Safety Code unless otherwise noted.

The motion was denied on December 4, 2008. Bankers filed a notice of appeal on January 5, 2009, which stated it was appealing the order or judgment entered on September 12, 2007, following "Bond Forfeiture, bond was not set at scheduled amount ($115,000) Defendant Absconded."[4]

## DISCUSSION

Bankers contends that when the state changes the conditions of a bail bond without the surety's consent, the surety is discharged. In Bankers's view, the complaint filed against Villa changed the conditions of his bond and it is therefore entitled to have the bond exonerated. We disagree.

Ordinarily we review an order denying a motion to vacate the forfeiture of a bail bond under an abuse of discretion standard of review. (*People v. Legion Ins. Co.* (2002) 102 Cal.App.4th 1192, 1195 [126 Cal.Rptr.2d 172].) While the People accordingly urge us to review for abuse of discretion, Bankers contends the particular question at issue here—whether the filing of the complaint materially increased Bankers's risk resulting in exoneration of the bond—calls for de novo review. Bankers relies on *People v. American Bankers Ins. Co.* (1992) 4 Cal.App.4th 348, 350 [5 Cal.Rptr.2d 620], in which this court reviewed an appeal from the trial court's granting of a motion to set aside a summary judgment and exonerate the bond independently where the evidence was not in dispute and the issue involved statutory construction. We need not decide which particular standard of review applies since we reach the same resolution of the issue presented under either standard.

When a criminal defendant fails to appear for any occasion where his presence is required, a trial court must declare a bail bond forfeited. (Pen. Code, § 1305, subd. (a).) There are statutory grounds for vacating forfeiture and exonerating a bond. (Pen. Code, § 1305, subds. (c), (d), (f), (g).) At any time, a surety may surrender a defendant and exonerate a bond under Penal Code section 1300, subdivision (a). Here, when Villa failed to appear at the

---

[4] The People contend it is unclear what order or judgment is being appealed because Bankers's opening brief does not contain a statement of appealability. The notice of appeal purports to appeal from the forfeiture order, which the People correctly note is a nonappealable order. (*People v. Oppenheimer* (1956) 147 Cal.App.2d Supp. 827, 829–830 [305 P.2d 306].) Bankers asserts in its opening brief that its notice of appeal was from an appealable order, citing *People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1382 [59 Cal.Rptr.2d 777], which states that an order denying a motion to set aside a forfeiture is an appealable order. We note that an order denying a motion to vacate summary judgment on a bail bond forfeiture is also an appealable order and is a proper vehicle for considering a jurisdictional attack on the summary judgment. (*County of Los Angeles v. Ranger Ins. Co.* (1999) 70 Cal.App.4th 10, 12, fn. 1 [82 Cal.Rptr.2d 214]; *People v. Wilshire Ins. Co.* (1975) 53 Cal.App.3d 256, 259 [125 Cal.Rptr. 529].) We construe the notice of appeal as taken from the December 4, 2008 appealable order.

September 12, 2007 hearing, the trial court was required to declare the bond forfeited under Penal Code section 1305, subdivision (a). Bankers's motion to vacate did not identify any statutory grounds for vacating the forfeiture. Instead, Bankers suggested it had a common law defense to the bond forfeiture because its risk was materially increased. There is no common law defense, however, and the risk was not increased.

█ A bail bond is a contract between the government and the surety. (*People v. Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356 [280 Cal.Rptr. 58].) The surety's liability is limited to the contract's terms. (*Coast Surety Co. v. Municipal Court* (1934) 136 Cal.App. 188, 190 [28 P.2d 421].) In the instant case, the bail bond includes the following "undertaking provision": "Bankers . . . hereby undertakes that the above-named defendant will appear in the above named court on the date above set forth to answer any charge *in any accusatory pleading based upon the acts supporting the complaint filed against him/her and all duly authorized amendments thereof*, in whatever court it may be filed and prosecuted, and will at all times hold him/herself amendable to the orders and process of the court and, if convicted, will appear for pronouncement of judgment or grant of probation; or, if he/she fails to perform either of these conditions, that [Bankers] will pay to the People of the State of California the sum of Seventeen Thousand Five Hundred Dollars." (Italics added.)

The terms of a bail bond are material facts. Here, the bail bond uses the term "charge" in two ways. First, the bond states that Villa was to appear in court on August 27, 2007, on sections 11378 and 11379 "charge/s." Then, the subsequent "undertaking provision" in the bond, which we have set out above, includes the statement that Bankers undertook to ensure that Villa would appear "to answer any charge in any accusatory pleading [that is] based upon the acts supporting the complaint filed against him." The appellate record does not show that any complaint had been filed against Villa when the bail bond issued on August 15, 2007, and does not contain any arrest or booking records, so the complete basis of the arrest is unknown. The charges listed in the bond do not establish that the arrest was made solely based on violations of sections 11378 and 11379, or the amount of drugs involved. Therefore, even though the complaint included charges under sections 11378 and 11379 that would have resulted in a higher bail amount based on the amount of drugs involved and a third charge that was not listed on the bond, under the terms of the "undertaking provision," it cannot be considered to be a unilateral and material *increase* in the risk assumed by Bankers. Bankers was free to monitor the case and determine what charges ultimately were made in the original complaint, and free to surrender Villa pursuant to Penal Code section 1300 if it believed the bond was inadequate to cover the flight risk presented by the complaint.

█   Bankers asserts it analyzed its risk "based on the charges presented by the booking officer when there was only one charge with bail set at $17,500." But there was more than one charge involved, as shown by the bond itself. Moreover, that Bankers may have analyzed its risk based on the bail set before the complaint was filed does not change the bond's language, which expressly states it undertook to guarantee Villa's appearance on "any charge in any accusatory pleading based upon the acts supporting the complaint" and "all duly authorized amendments thereof." While Bankers also asserts the bail was increased from $17,500 to $115,000 without notice being provided to it, there is nothing in the record to show that the trial court ever actually increased the bail. Instead, the complaint included charges that warranted a higher bail based on the bail schedule; the trial court, however, never actually increased the bail. That higher bail might have been warranted, however, does not mean Bankers's risk materially increased, since the bond language encompassed the charges that ultimately were included in the complaint.

Bankers's reliance on *People v. Surety Ins. Co.* (1983) 139 Cal.App.3d 848 [189 Cal.Rptr. 89] (*Surety*) and *People v. Resolute Ins. Co.* (1975) 50 Cal.App.3d 433 [123 Cal.Rptr. 246] (*Resolute*) is misplaced, as those cases involved the failure to give the surety the notice required under Penal Code section 1303 when the bail bond posted on one action is transferred to new charges filed soon after the first action is dismissed. In both cases, the reviewing courts held the Penal Code section 1303 notice is a mandatory protection for a surety that is being subjected to a unilateral amendment of its contract by having its bail transferred from one case to another, and a failure to provide the surety with notice of the transfer, so that it can appraise the new complaint and decide whether to assume the risk in it or surrender the defendant, warrants exoneration of the bail. (*Surety, supra,* 139 Cal.App.3d at p. 854; *Resolute, supra,* 50 Cal.App.3d at pp. 435–437.)

We are not dealing here, however, with the lack of notice under Penal Code section 1303, as there has been only one complaint filed. Moreover, we note the "undertaking provision" in the instant bail bond appears designed to deal with situations where new accusatory pleadings are filed after the original complaint. In that respect, it is different from the language for written undertakings set out in Penal Code section 1278, which states in part that sureties undertake that the criminal defendant "will appear and answer any charge in any accusatory pleading *based upon the acts supporting the charge above mentioned*," that is, the charge on which the court ordered the defendant to appear.

Bankers cites to a Colorado case, *People v. Jones* (Colo.Ct.App. 1994) 873 P.2d 36 (*Jones*) to support its position that the difference between the charges Villa posted bail on and the charges contained in the later-filed

complaint constitute a material increase in the risk Bankers assumed under its bail bond. In *Jones*, the court concluded the addition of habitual criminal charges that exposed the defendant to a life term to pending drug charges that carried a possible 24-year sentence materially increased the sureties' risk, thereby exonerating the bond. (*Id.* at pp. 37–38.) That case is readily distinguishable, however, as the court there explained the sureties' risks and obligations "were objectively defined and limited by the terms of the bond agreement to defendant's appearances solely on the drug charges that were then pending against him." (*Id.* at p. 38.) In contrast here, Bankers guaranteed Villa's appearance on any charges in the accusatory pleading and authorized amendments. Bankers's risk was more open-ended than the risk in *Jones*.

Citing a long list of federal and out-of-state cases, Bankers argues that a surety is entitled to stand on its contract and increasing the risk to a surety is the gravamen of a unilateral change on the government's part. We have no quarrel with those arguments; they simply do not apply to this case.

For the first time on appeal, Bankers contends government action rendered its performance impossible and that equitable estoppel should apply. Bankers has not shown, however, how its performance was rendered impossible. While Bankers asserts its performance was rendered impossible because the bail schedule was available only to the jailer, as the People point out, the bail schedule is available on the Fresno County Superior Court's Web site and therefore equally available to Bankers. Bankers also asserts impossibility of performance from the trial court's failure to comply with the requirement of Penal Code sections 1305 and 1306 that it announce the change in charges and bail amount, and remand Villa to custody. We can find nothing in those sections, however, that required the trial court to act as Bankers suggests under these circumstances.

■ Bankers's equitable estoppel claim also fails because there is nothing in the record to show that the People misrepresented or concealed material facts. (See *People v. American Contractors Indemnity Co.* (2006) 136 Cal.App.4th 245, 251 [38 Cal.Rptr.3d 603] [listing elements of estoppel, which are " '(a) a representation or concealment of material facts (b) made with knowledge, actual or virtual, of the facts (c) to a party ignorant, actually and permissibly, of the truth (d) with the intention, actual or virtual, that the ignorant party act on it, and (e) that party was induced to act on it' "].)
■ The state does not owe a surety "a duty of disclosure in the absence of active concealment or misrepresentation or a showing that the [s]tate had exclusive knowledge of facts that were not known to or reasonably discoverable by the surety." (*People v. Accredited Surety & Casualty Co., Inc.* (2004) 125 Cal.App.4th 1, 5 [22 Cal.Rptr.3d 375] (*Accredited Surety*) [holding that setting bail below the minimum in the bail schedule without making the

findings of fact required under Pen. Code, § 1275 did not exonerate the surety's bond].) Thus, the state has no obligation to disclose the amount of drugs a defendant possesses, his potential sentence or why the trial court set bail below the bail schedule minimum. (*Accredited Surety, supra*, 125 Cal.App.4th at p. 8.) If certain facts are important to deciding whether to issue a bail bond, the surety can check the trial court file. (*Id.* at p. 10.)

The trial court did not err in denying Bankers's motion to set aside the summary judgment, vacate the forfeiture and exonerate the bond.

## DISPOSITION

The order denying Bankers's motion to set aside the summary judgment and forfeiture of the bail bond, and to determine that the bond was exonerated, is affirmed.

Vartabedian, Acting P. J., and Wiseman, J., concurred.