Filed 5/4/15  Glassner v. Smith CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRANK GLASSNER, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MARK SMITH et al., <br><br> Defendants and Appellants. | A140876 <br><br> (Marin County <br> Super. Ct. No. CIV 1204967) |
| FRANK GLASSNER, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JANICE BATTAGLIA, <br><br> Defendants and Respondent. | A141255 <br><br> (Marin County <br> Super. Ct. No. CIV 1204967) |

A dispute between members of a homeowners' association got out of hand. Plaintiff Frank Glassner, who had just won a seat on the association's board, accused current and former board members of fraud and mishandling of funds.  Defendants, some of the accused board members and other association members, struck back with a recall campaign, the focal point of which appears to have been a Web site that disclosed purported facts about Glassner.  The site made a mountain out of Glassner's two molehill convictions for traffic infractions (calling Glassner a twice-convicted criminal), publicized allegations made against Glassner in a sexual harassment lawsuit (which had

1

been settled), and associated Glassner with his live-in partner's legal actions against the association (notably a small claims court matter to reclaim contested association fines and a $15,000 demand to settle that case and other discrimination and regulatory matters).

Based on statements made on the recall Web site and statements made at a board meeting, Glassner filed this action against defendants for defamation-related claims. Defendants responded with a special motion to strike the complaint under the "anti-SLAPP statute," Code of Civil Procedure section 425.16. The trial court granted the motion as to one defendant, Battaglia, whose involvement with publishing the recall Web site seemed indirect, but otherwise denied the motion. We conclude the motion should have been granted in full, and accordingly affirm in part and reverse in part.

## BACKGROUND

Glassner's live-in partner, Crystine Lee, purchased a home in the Pointe Marin neighborhood and became a member of the Pointe Marin Homeowners' Association (HOA). Glassner, Lee, and Glassner's two sons from a prior marriage moved into the Pointe Marin home in April 2011.

Upon moving in, as Glassner tells it, "our home had no landscaping and was not appropriately graded," such that water would, after rainstorms, pool and flow toward the home, rendering "[o]ur yard" unsightly and threatening long-term structural damage. Thus, Glassner and Lee decided to make improvements to the property. As the improvements were not approved by the HOA, the HOA, in June 2011, imposed a fine of $5,925 on Lee, who was then sole owner of the property.

Lee eventually paid $4,000 to the HOA under protest, and then, in December 2011, sued the HOA in small claims court, seeking reimbursement of $2,979, claiming the levied fine was improper and excessive. In February 2012, Lee filed a second small claims action against the HOA, seeking $5,137.50 because of its alleged failure to disclose records to her upon request.

Just after Lee filed her first lawsuit, Glassner, in late January 2012, sent a letter to all 342 members of the HOA expressing his displeasure with the current board's processes (criticizing board members Elissa Sarlatte and Joseph Youmans in particular),

2

noting questions about the HOA's "financial management," and declaring his intention to run for the board in the next election. To alleviate concerns about his not owning a Pointe Marin property, Glassner acquired, in April 2012, a 1 percent interest in Lee's home.

Glassner won election and, on or about May 21, 2012, assumed his new position on the board.

A week later, Lee made, and the HOA rejected (with Glassner recusing himself), a $15,000 settlement demand. The demand sought to resolve not only the two small claims matters, but also threatened to file an administrative complaint with the California Attorney General (regarding the nondisclosure of records) and an action under California's Fair Housing and Employment Act[1] (based on the board's alleged discrimination against her based on her being Asian, female, and in an unorthodox relationship). The letter threatened the Attorney General action could saddle the HOA with $15,000–$50,000 in expenses and noted, given the HOA's current reserves, a special assessment might be necessary. It also noted the discrimination action could result in damages for "losses and emotional distress."

In June, Lee obtained a judgment recouping some of the payments she had made to the HOA, and ultimately won a $2,829 judgment in the two cases.

Meanwhile, Glassner quickly flexed his authority as a board member and sought to replace the HOA's management company, attorney, accountant, and members of the architectural review committee—the committee whose approval was apparently needed for the home improvements—and accused other current and former board members of fraud and mismanagement. This did not sit well with defendants, some of whom met to plan a campaign to recall Glassner.

From about July 17–21, 2012, a Web site titled "Recall Frank. B Glassner (FBG)" was published to RecallFBG.org and RecallFBG.com. The Web site contained the following statements, which Glassner contends were defamatory:

---

[1] Government Code section 21900 et seq.

3

- Glassner "has been convicted in two criminal cases, appeals of these cases failed and his convictions were upheld."

- "FBG is part owner with his domestic partner of a home in Pointe Marin (the 'FBG Household') who has sued your HOA . . . . The lawsuit was filed under the name of FBG's domestic partner Dr. Crystine Lee which allows FBG to claim he is not a party to the lawsuit – an extremely transparent position given his clear connection to the legal claims. The FBG Household asked your HOA to pay Fifteen Thousand dollars to make them drop their legal actions. You may be asked to pay a special assessment and/or your homeowners dues may increase – you can blame FBG and the FBG Household if this happens as a result of their actions." (Italics omitted.)

- The "FBG Household's legal actions are costing your HOA thousands of dollars which may be paid by YOU the homeowners of Pointe Marin . . . ."

- Lawsuits by FBG or the FBG Household could most certainly increase your HOA dues or even cause you to have to make a large special assessment to your HOA.

- Glassner has a "conflict of interest" and should resign.

- Property values are "under attack" by Glassner.

- One could view Glassner's conduct since joining the board as "at worst as 100% self serving."

Glassner's attorney sprang into action and sent a takedown demand to the company hosting the recall Web site. In response, on or about July 21, 2012, the recall Web site was modified and, in essence, only a copy of the takedown letter was posted. The letter asserted the Web site was defamatory, stating the two supposed "criminal" convictions were simply speeding ticket matters. The following day, July 22, 2012, the copy of the takedown letter, which may have included a copy of the original Web site, was also removed.

On August 7, there was another HOA board meeting, which Glassner attended as a board member. The recall election was a hot topic. According to Glassner, when he stated his "crimes" were simply speeding violations, HOA board member Mark Smith stated: " 'You haven't proven a thing. As far as we are concerned, you are still a

4

criminal.' " Glassner also asserted Youmans said: " 'You are a child molester, and no one should trust you around their daughters.' "

A witness, Linda Riedel, who later provided a declaration supporting Glassner, heard Youmans say: " 'As far as I'm concerned, you are a criminal.' " (Boldfaced type omitted.) Riedel also heard Youmans say "in substance and gist, that the HOA members should not trust Glassner around their children," a remark she "understood . . . to be an accusation that Glassner was a child molester." Meanwhile, Lee, Glassner's partner who also attended the meeting, only recalled Youmans saying Glassner was a "pervert" and cautioning others to keep their daughters away from him; she made no reference to any accusation of child molestation, express or implied.

Throughout August, September, and October 2012, numerous letters from all sides were sent to the HOA membership arguing for and against the recall and arguing the merits of Glassner's accusations against the board and its hired help.

In early November, the recall election was complete, and Glassner was ousted.

Within a week, on November 5, Glassner filed the instant case against Smith, Youmans, Sarlatte, Peter Migale (a member of the HOA's architectural review committee), and Janice Battaglia (Smith's wife). Seeking over $2 million in damages, he alleged libel, slander, and false light invasion of privacy. All five named defendants responded, in January 2013, with a special motion to strike under the anti-SLAPP statute, Code of Civil Procedure section 425.16.

Glassner provided evidence the two "criminal" actions were indeed unsuccessful appeals of traffic infractions to the appellate division of the Marin County Superior Court. On the other hand, defendants provided evidence the statements about Glassner not being welcome near neighborhood "daughters" arose from a now-settled 2005 sexual harassment complaint by a former employee of Glassner's. In the 2005 complaint, Glassner, then approximately 50 years old, was accused of hiring the 22-year-old daughter of a friend, making unwanted advances toward her (asking for hugs, planting kisses, "tackl[ing]" her onto a hotel bed, fondling her breast, and "dry humping" her) and creating awkward carpooling and business travel scenarios (reserving adjoining hotel

5

rooms, inviting her to client meetings only to have them turn into dates for the two of them alone). The complaint alleged Glassner, on one business trip, gave the woman an " 'Ambien' " to help her sleep and then, later, came through an adjoining doorway and crawled into her bed. The woman claimed she lost consciousness and did not awake until the next morning, at which time Glassner allegedly made comments about the nature of her genitalia.

The trial court granted the anti-SLAPP motion as to Battaglia because of her limited involvement in producing the recall Web site. The trial court denied the motion as to the other defendants. It agreed with defendants that Glassner was a limited purpose public figure, but concluded Glassner had made a sufficient showing on the merits—i.e., that defendants' statements concerning criminal convictions and Glassner's affiliation with legal actions against the HOA were false and made with reckless disregard of their truth—to avoid dismissal.

Glassner appealed (case No. A141255). Defendants, excepting Battaglia, also appealed (case No. A140876). Glassner then cross-appealed in the second matter, purportedly because the trial court erroneously concluded he was a limited purpose public figure. Glassner makes no effort to justify his cross-appeal in case No. A140876, and we dismiss it. While Glassner may not agree with the trial court's *discussion* of his public figure status, he was not aggrieved by the court's *ruling* denying the defendants' anti-SLAPP motion. (*Gober v. Ralphs Grocery Co.* (2006) 137 Cal.App.4th 204, 211 ["A party is not aggrieved by a judgment or order rendered in its favor"].)[2] We have consolidated case Nos. A141255 and A140876 for oral argument and disposition.

## DISCUSSION

A cause of action is a "SLAPP" (a strategic lawsuit against public participation) and subject to a special motion to strike if (a) it arises from protected activity and (b) the plaintiff cannot show a probability of prevailing. (Code Civ. Proc., § 425.16; *Tutor-*

---

[2] It is regrettable that the impropriety of Glassner's cross-appeal was not raised sooner, as the parties and court would have been spared the burdens of producing and reading additional, duplicative briefing.

6

*Saliba Corp. v. Herrera* (2006) 136 Cal.App.4th 604, 609.)  In this case, all agree Glassner's libel, slander, and false light causes of action[3] arise from protected activity.  Thus, we focus on the second prong of the analysis, the probability of prevailing.  (*Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 112, 120.)  Our review is de novo.  (*Id.* at p. 119.)

"Defamation requires a publication that is false, defamatory, unprivileged, and has a tendency to injure or cause special damage.  [Citations.]  To establish a false light invasion of privacy claim, [a plaintiff] must meet the same requirements."  (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 277.)  The "sine qua non" of such claims is falsehood.  (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 426.)  When the alleged falsehoods are directed at public figures, malice must be shown.  (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1018; *Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 149.)

" 'Actual malice . . . requires at a minimum that the statements were made with a reckless disregard for the truth.  And although the concept of "reckless disregard" "cannot be fully encompassed in one infallible definition," [citation], we have made clear that the defendant must have made the false publication with a "high degree of awareness of . . . probable falsity," [citation], or must have "entertained serious doubts as to the truth of his publication," [citation].' "  (*Young v. CBS Broadcasting, Inc.* (2012) 212 Cal.App.4th 551, 562–563.)  Failure to investigate, anger or hostility, or reliance on unreliable sources, may indicate a defendant's doubt about a statement's truth, but these factors are only relevant in context.  Mere proof of ill will is not malice.  Nor is the mere failure to conduct a thorough investigation.  (*Id.* at p. 563.)

We have no trouble concluding Glassner, who sought out election to and retention on the HOA board, was a public figure, limited to the context of his suitability for HOA

---

[3]  Even the newer claims in the later-filed, March 2013 first amended complaint—for infliction of emotional distress, conspiracy, and disclosure of private facts—all arise from the same alleged statements.  Glassner makes no argument the motions to strike should have been denied based on these new causes of action.

leadership and his positions on HOA management issues. All of the alleged defamatory statements were made in the context of challenging Glassner's fitness for the office he had just won. While the dispute may have arisen partly from petty spite, the composition of the HOA's board and the decisions it makes are of critical importance to the hundreds of HOA members and other residents of Pointe Marin, for whom the HOA plays the unique role of a "second municipal government." (*Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, 1082, 1089 & fn. 4, 1092–1093 [even person who actively campaigned for HOA candidate treated as limited public figure]; see also *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 478–480; cf. *Silk v. Feldman* (2012) 208 Cal.App.4th 547, 553 ["Treating a homeowners association in the same manner as a municipal government could reasonably lead to the conclusion that Feldman's letter constituted free speech in connection with an issue of public interest . . . ."].)

Accordingly, Glassner, in this case, must shoulder the heightened burden of a limited public figure, including "the burden of proving actual malice by clear and convincing evidence." (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 483–484.) At the motion to strike stage, Glassner must show a reasonable probability that such clear and convincing evidence can be produced. (*Young v. CBS Broadcasting, Inc.* (2012) 212 Cal.App.4th 551, 563.)

The key problem, though, with Glassner's defamation and related claims, however, is his failure to show falsity of defendants' statements. A limited public figure "who seeks to recover damages for a defamatory statement bears the burden of proving that the challenged statement was false." (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1021 (*Vogel*).) This burden is not carried "so long as the statement appears *substantially* true." (*Ibid.*) "To bar liability, ' "it is sufficient if the *substance* of the charge be proved true, irrespective of slight inaccuracy in the details." [Citations.] . . . [Citation.] . . . Minor inaccuracies do not amount to falsity so long as "the substance, the gist, the sting, of the libelous charge be justified." [Citations.] Put another way, the statement is not considered false unless it "would have a different effect on the mind of the reader from

8

that which the pleaded truth would have produced." [Citations.]' (*Masson v. New Yorker Magazine* (1991) 501 U.S. 496, 516–517, italics added [discussing California law].)" (*Vogel*, *supra*, 127 Cal.App.4th at p. 1021; see also *Bently Reserve LP v. Papaliolios*, *supra*, 218 Cal.App.4th at p. 434.)

***Accusations of Criminal Behavior***

We start with the statements Glassner is a convicted criminal whose convictions were upheld on appeal. While Glassner rails against these characterizations, the statements are substantially true.

Glassner, himself, presented evidence his two convictions and appeals were of speeding infractions in violation of Vehicle Code section 22350. (See *Ryan-Lanigan v. Bureau of Real Estate* (2013) 222 Cal.App.4th 72, 76 [violations of the general speeding law are infractions].) "In California, however, traffic infractions have not been decriminalized." (*People v. McKay* (2002) 27 Cal.4th 601, 615, fn. 16; see also *People v. Lucas* (1978) 82 Cal.App.3d 47, 51, fn. 1 ["The California Municipal and Justice Courts Manual, published by the California Center for Judicial Education and Research (1974)" states " 'It has long been recognized that . . . traffic violations are classified as criminal offenses . . . .' "]; Pen. Code, § 1465.8, subd. (a)(1) ["To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every *conviction for a criminal offense*, *including a traffic offense* . . . ."], italics added.)

Thus, speeding infractions, in California, *are crimes*. Indeed, section 16 of the Penal Code defines "[c]rimes and public offenses" as encompassing felonies, misdemeanors, *and infractions*. (Pen. Code, § 16.) A public offense is synonymous with a crime. (*People v. Surety Ins. Co.* (1983) 139 Cal.App.3d 848, 853; *Burks v. United States* (9th Cir. 1961) 287 F.2d 117, 122; Levenson & Ricciardulli, Cal. Practice Guide: Criminal Law (The Rutter Group 2014) ¶ 1:1, fn. 2, p. 1-2; see also *People v. Hamilton* (1986) 191 Cal.App.3d Supp. 13, 16–17 [rejecting notion that traffic infraction is not a public offense, hence a crime].) Further, California courts routinely refer to infractions as crimes. (See, e.g., *In re Wimbs* (1966) 65 Cal.2d 490, 494 [noting petitioner's "minimal prior criminal record" of a minor traffic violation and a minor game law violation];

9

*People v. McHugh* (2004) 119 Cal.App.4th 202, 209, fn. 6 [probable cause for "criminal offense . . . , even if the offense is a minor traffic violation" sufficient to justify custodial arrest]; *People v. Monroe* (1993) 12 Cal.App.4th 1174, 1184 [noting "policy of avoiding custodial arrest in most instances involving minor criminal violations, especially traffic violations"]; *People v. Simpson* (2014) 223 Cal.App.4th Supp. 6, 9 ["An infraction is a criminal matter subject generally to the provisions applicable to misdemeanors, except for the right to a jury trial, the possibility of confinement as a punishment, and the right to court-appointed counsel if indigent."]; *People v. Kus* (2013) 219 Cal.App.4th Supp. 17, 21 ["*Criminal* defendants maintain a right to jury trial in all misdemeanor and felony cases, but do not have that right in cases involving infractions."], italics added.)

That a court stated the contrary in 1987, something Glassner notes, does not change the state of the law—or the meaning of the word "infraction" in California. (See *People v. Sava* (1987) 190 Cal.App.3d 935, 939 (*Sava*) [stating infraction not a crime and holding jury could not be instructed on infraction as lesser included offense of misdemeanor].)[4] Thus, while defendants' credibility, character, and motives may well be questioned for labeling speeding violations as crimes, they did not publish defamatory *falsehoods* in this regard.

Moreover, even if it were debatable whether a traffic infraction is a "crime," given the state of the law and the record that defendants obtained the information from the superior court's Web site pertaining to "criminal" matters, there is no showing sufficient to meet the requisite malice requirement.

---

[4] *Sava* is the lone case Glassner cites regarding the nature of infractions. The case on which *Sava* relies for its statement regarding the criminality of infractions, *People v. Battle* (1975) 50 Cal.App.3d Supp. 1, was later rejected by another case, *People v. Hamilton* (1986) 191 Cal.App.3d Supp. 13, 17, which *Sava* does not address. Even if the accusation of criminality were ultimately false, the enormous weight of authority suggesting infractions *are* crimes suggests making the accusation against one guilty of an infraction is not in reckless disregard of the truth. After all, if jurists in the late 1980s could be said to disagree on whether an infraction is a crime, surely the layperson could not be faulted for choosing either side of the debate.

*Affiliation with Lee's Litigation*

We next turn to the largest class of the allegedly defamatory statements—those connecting Glassner with the litigation against the HOA over improvements to his residence and the legal threats made to the HOA by Lee, his live-in partner. Again, we conclude these statements are substantially true.

The gist of the Web site's remarks on the legal actions against the HOA can be summarized as follows: Although Lee was the named plaintiff in lawsuits against the HOA (the Web site prominently acknowledges this on several occasions), Glassner, her cohabitating partner, was connected to those suits and related legal actions, and supportive of them, and the HOA membership should hold Glassner accountable as if the legal actions were emanating from his and Lee's "household."

Glassner asserts the legal actions are Lee's, alone. But he does not deny a connection to the actions or deny support of them. On the contrary, the dispute began when Glassner and Lee, together, decided to make improvements to "our" home (both Glassner and Lee use this word in their declarations). Thus, Glassner can be said to have been involved in the improvement quagmire from day one. Glassner further demonstrated his affiliation with Lee by both voluntarily recusing himself from the board discussion of her $15,000 demand letter (choosing not to "take [her] side" at the meeting) and attending the June 2012 small claims hearing (at which he was present "at all times" and clearly in support of Lee). Whether Glassner was named on the pleadings of Lee's litigation or not, it was not untruthful to maintain that both Lee and Glassner were behind them. A trier of fact could not conclude the Web site "implied a provably false assertion," as Glassner contends. (See *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 901–904 [dealing with altogether-omitted clarifying statements of significant import, when omissions done by an expert, not a layperson].)[5]

_____

[5] The Web site's repeated use of the defined term "FBG Household" to refer to Lee and Glassner acting together is not a falsehood, but a further expression of the fairly reasonable opinion that Lee and Glassner operated as a household, and that Glassner

11

Glassner also claims the legal actions could not have been "costing the HOA thousands" and could not have exposed the HOA membership to special assessments, when the small claims actions had already been concluded.  But Glassner ignores the then-outstanding threats of "further litigation" in connection with the administrative and discrimination claims and, specifically, the threat that the administrative action, alone— which had already been initiated—could cost the HOA $15,000–$50,000 and, in Lee's words, result in a special assessment given the then-current level of the HOA's reserves.

The claims that Glassner had a "conflict of interest" or was "self serving" are opinions, and not actionable as libel.[6]  (*Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 952 [claiming there existed a conflict of interest was an opinion based on a layperson's view that conduct was immoral and gave the appearance of impropriety; it was not actionable].)  Anyhow, one might surmise Glassner recognized a conflict of interest when he recused himself from considering Lee's settlement demand, and one could easily envision future board proceedings on the claims raised in that letter at which Glassner would have to recuse himself again, leaving an understaffed board to make important HOA decisions.  Thus, this is not a case like *Silk v. Feldman*, *supra*, 208 Cal.App.4th at pages 554–556, in which a letter "on its face accused [a board member] of a serious breach of fiduciary duty" and did so by stating demonstrably false facts.

### Comments Made at the August 7, 2012 Board Meeting

That brings us to the oral statements made at the contentious August 7, 2012, board meeting at which Glassner's recall was front and center.

Smith or Youman's comments that Glassner "was a criminal" or "still a criminal," add nothing to the other accusations of criminality already made, and are not defamatory for the reasons we have discussed above.

---

could not reasonably disclaim his interest in the success of Lee's actions against the HOA.

[6] Defendants did not say Glassner had "breached a fiduciary duty," as Glassner asserts.  Rather, the Web site presented the case for "a conflict of interest."

12

The comment that HOA member Riedel heard Youmans essentially say that HOA members should not trust Glassner with their children or daughters, is both a statement of opinion and grounded in the fact that Glassner chose to settle, rather than fight, a civil complaint leveling serious allegations of sexual harassment based on Glassner's conduct toward his friend's 22-year-old daughter, a woman nearly 30 years his junior.

We are left, then, with the purported accusation, " '[y]ou are a child molester,' " which Glassner, in his declaration opposing the anti-SLAPP motion, claims Youmans hurled at the August 7 meeting.

Notably, Lee, Glassner's partner and also an attendee at the meeting, recalled only that Youmans called Glassner a "pervert" and cautioned others to keep their daughters away from him. She made no reference to any accusation by Youmans of child molestation. Reidel, also otherwise a Glassner supporter, similarly did not aver that Youmans said such a thing, instead declaring Youmans warned others not to trust Glassner with their daughters—a statement she claimed to have "understood" to *imply* an accusation that Glassner was a child molester.

Further, while Glassner's initial and first amended complaints (he filed the amended complaint in March 2013) both describe Youman's remarks about Glassner's supposed untrustworthiness around young women, *neither* alleges Youmans accused Glassner of being a child molester—a startling omission if such a statement had, in fact, been made. The omission from the first amended complaint is especially telling, as Glassner filed the pleading two months *after* defendants filed their special motion to strike for the purpose of, as Glassner's counsel noted at oral argument, providing allegations of greater specificity in the wake of defendants' demurrer.

A court ruling on an anti-SLAPP motion targeting claims of defamation is "justified in disregarding any evidence or argument concerning statements not explicitly set forth in the complaint." (*Vogel*, *supra*, 127 Cal.App.4th at p. 1017, fn. 3; cf. *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 31 ["If the pleadings are not adequate to support a cause of action, the plaintiff has failed to carry his burden in resisting the motion."].) Given the circumstances, we do so here. Indeed, we conclude it is particularly

13

appropriate to disregard this unpled accusation, given the state of the evidence on what Youmans said (especially the contradictory nature of Glassner's own evidence), the obviously charged atmosphere of the HOA meeting, and the background understanding amongst HOA members of the allegations of the 2005 sexual harassment lawsuit.

We therefore conclude Glassner failed to make enough of a showing to survive the defendants' anti-SLAPP motions.

**DISPOSITION**

The order granting in part and denying in part defendants' special motion to strike is affirmed to the extent it granted the motion as to Battaglia and is reversed as to the other defendants with directions that the motion be granted. All parties to bear their own costs on appeal.[7]


_____
Banke, J.


We concur:


_____
Humes, P. J.


_____
Dondero, J.

_____

[7] Glassner's request for judicial notice filed September 25, 2014 is hereby denied.